**FILED**

**MARCH 12, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GRIZZLY INDUSTRIAL, INC.     )
    )
       Plaintiff,     )
    )     Civil Action No.
   v.     )
    )
PUCEL ENTERPRISES, INC.,     )
    )
      Defendant.     )

**08 C 1483**

**JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE NOLAN**

### COMPLAINT

Plaintiff, GRIZZLY INDUSTRIAL, INC., by its undersigned attorneys, for its Complaint against defendant PUCEL ENTERPRISES, INC. alleges as follows:

### STATUTORY BASIS AND NATURE OF ACTION

1.     By this action, pursuant to 15 U.S.C. § 1071(b)(1) of the Federal Trademark Act, plaintiff seeks judicial review and reversal of the Decision of the Trademark Trial and Appeal Board (the "TTAB" or the "Board") dated January 16, 2008, including, but not limited to, reversal of the following TTAB findings and rulings:

    (a)     Granting Opposition No. 91123506, and refusing registration of plaintiff's application Serial No. 76/088,346 (hereafter "'346") for the mark GRIZZLY.COM.

    (b)     Granting petition for Cancellation No. 920331984 and ordering that plaintiff's Registration No. 2,166,833 (hereafter "'833") for the mark GRIZZLY be cancelled.

    (c)     Granting petition for Cancellation No. 92032024 and ordering that plaintiff's Registration No. 2,413,625 (hereafter "'625) for the mark GRIZZLY be cancelled.

(d)     Granting petition for Cancellation No. 92032025 and ordering that plaintiff's Registration No. 2,312,226 (hereafter "'226") for the mark GRIZZLY INDUSTRIAL be cancelled.

(e)     That defendant's unpled common law use of its GRIZZLY trademark was tried by the implied consent of the parties, pursuant to F.R.C.P. 15(b).

(f)     That plaintiff's unpled acquiescence defense was not tried by implied consent, pursuant to F.R.C.P. 15(b).

(g)     That defendant's cease and desist letter of May 30, 2000 was not admissible to prove acquiescence, estoppel and laches on the ground that said letter was a settlement communication pursuant to F.R.C.P. 408.

(h)     That five (5) instances of confusion [over a period of approximately twenty (20) years of concurrent use] are probative of whether confusion is likely.

(i)     That there is a likelihood of confusion between plaintiff's and defendant's respective marks for goods and services described in plaintiff's application and registrations and the goods described in defendant's registrations.

2.     Plaintiff also seeks a determination and ruling by the Court as to the following:

(a)     That the testimony offered by Dr. Levy [plaintiff's marketing expert] is relevant and probative.

(b)     Granting plaintiff's motion to amend application Serial No. 76088346 and Registration No. 2413625 to narrow the description of goods by deleting material handling equipment, and narrowing plaintiff's channels of trade by limiting the goods and services to products and services for woodworking and metal working.

(c)     That defendant's cease and desist letters to plaintiff dated April 11, 2000 and May 30, 2000 constitute acquiescence and estoppel.

(d)     That defendant's cease and desist letters to plaintiff dated April 11, 2000 and May 30, 2000 were not evidence of conduct or statements made in comprise negotiations.

(e)     That plaintiff's and defendant's established trade channels and classes of purchasers are different.

(f)     That the conditions under which sales are made preclude any likelihood of confusion.

(g)     That the high degree of care exercised by plaintiff's and defendant's respective customers in purchasing plaintiff's and defendant's respective products precludes a likelihood of confusion.

(h)     That defendant's mark is weak and only entitled to a narrow scope of protection.

## THE PARTIES

3.     Plaintiff GRIZZLY INDUSTRIAL, INC. is a Washington corporation located in Bellingham, Washington.  Plaintiff is engaged in the business of manufacturing, distributing and selling metal and woodworking machines and equipment.

4.     Defendant PUCEL ENTERPRISES, INC. is an Ohio corporation located in Cleveland, Ohio, and is engaged in the business of manufacturing, distributing and selling material handling equipment throughout the United States, including this district.

3

## JURISDICTION AND VENUE

5.      Jurisdiction is expressly conferred on this Court under 15 U.S.C. §§ 1121 and 1071(B) and 28 U.S.C. §§ 1331 and 1338(a).

6.      Personal jurisdiction over defendant is vested in this Court since defendant has been and continues to engage in business in this district.   In further support of jurisdiction, plaintiff alleges as follows:

(a)      Defendant distributes its products nationwide in all fifty states, including in the Northern District of Illinois.

(b)      One of defendant's largest customers is located in this district, and defendant has sold its products to this customer for the past 10 to 15 years.  Defendant's customers also include in excess of five other large, well-known corporations located in this district.

(c)      Defendant owns and operates a website, www.pucelgrizzly.com, which allows customers nationwide, including in the State of Illinois, to configure their orders, obtain quotes, and subsequently place orders to purchase defendant's products via the internet.

7.      Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events occurred in this district and defendant is subject to personal jurisdiction herein.

## BACKGROUND

8.      The TTAB decision dated January 16, 2008, relates to a consolidated proceeding involving one opposition and three cancellation actions, in which defendant, Pucel Enterprises,

Inc., was the opposer/petitioner, and plaintiff, Grizzly Industrial, Inc., formerly Grizzly Imports, Inc., was the applicant/registrant.

9.     The founder, owner and current president of plaintiff founded Grizzly Imports, Inc. in 1983. In 1997, Grizzly Imports, Inc. changed its name to Grizzly Industrial, Inc. Since 1983, Plaintiff has been continuously selling woodworking and metal working tools and machinery under the name and mark Grizzly.

10.    Defendant is engaged in the business of manufacturing and selling cabinets, tables, dollies and hand trucks. Defendant sells its products under the names Pucel Enterprises, Pucel, Pucel/grizzly, and grizzly equipment.

11.    Plaintiff is the owner of U.S. Registration No. 2,166,833, dated June 23, 1998, for the mark GRIZZLY for woodworking and metal working machinery in International Class 7. The underlying application was filed in 1996 and was published for opposition on September 16, 1997. The application alleged a date of first use of 1983. Defendant did not oppose the application from which this registration issued.

12.    Plaintiff is the owner of U.S. Registration No. 2,413,625, dated December 19, 2000, for the mark GRIZZLY for woodworking and metal working machinery and tools, e.g., saws and drill presses in International Classes 6, 7, 8, 9 and 16, and mail order services for woodworking and metal tools and machinery in Class 35. The underlying application was filed in 1999 and was published for opposition on September 26, 2000. The application alleged dates of first use of 1983 for some goods and 1986 for the remaining goods. Defendant did not oppose the application from which this registration issued.

13.    Plaintiff is the owner of U.S. Registration No. 2,312,226, dated January 25, 2000, for the mark GRIZZLY INDUSTRIAL for woodworking and metal working machinery in

International Class 7.  The underlying application was filed in 1997 and was published for

opposition on February 23, 1999.  The registration, as amended (motion and amendment are

pending), alleges a date of first use of August 1997.  Defendant did not oppose the application

from which this registration issued.

14.    Plaintiff is the owner of U.S. Application Serial No. 76/088,346, filed July 10,

2000, for the mark GRIZZLY.COM for retail store services, on-line retail store services and mail

order services featuring woodworking and metal working machinery and tools in International

Class 35.  The application was published May 15, 2001, and alleged a date of first use of June

30, 1999.

15.    On May 30, 2000, the attorneys for defendant sent a letter to plaintiff's attorneys

stating, among other things, the following:

> **While we do not have a problem with your client's use of Grizzly in
> conjunction with wood-working equipment**, we are extremely concerned with
> and object to your client's crossing into our client's product line.  In this regard,
> we must reiterate our demand and request that Grizzly Industrial, Inc. discontinue
> all use of Grizzly in conjunction with materials handling products such as storage
> cabinets, file cabinets, mobile door cabinets, portable workbenches, machine
> cabinet stands, heavy duty tool stands, assembly stools, welding benches,
> workbenches, workbench cabinet units, workstations, utility tables and carts,
> mobile tables and carts, hydraulic lift top tables, portable writing tables and carts,
> box carts, shop tray trucks, hopper tables, stock carts, shop trucks, ladder stock
> carts, shelf trucks, hand dump trucks, rollover dump trucks, rollover box trucks,
> box truck, shelf trucks, garment trucks, dolly platform trucks, portable bins and
> shelf carts, all-purpose hand trucks, drum and can handling equipment, shelving,
> racks and the like.

The letter also admits that defendant had long been aware of plaintiff "doing business under the

name of Grizzly Imports which dealt solely in woodworking equipment."  In the mid-80s,

plaintiff received in the mail one of defendant's catalogs.  Defendant's president ordered a D&B

report on plaintiff in 1995, but did not take any action.

16.    In May 2001, defendant filed a notice of opposition against Grizzly Industrial, Inc.'s '346 application for the mark GRIZZLY.COM, and defendant also filed petitions for cancellation against plaintiff's '625, '833 and '226 registrations for the marks GRIZZLY and GRIZZLY INDUSTRIAL.

17.    Defendant's basis for the opposition and three cancellation proceedings were identical. Defendant relied on six (6) registrations, namely, three (3) registrations for the mark "grizzly" in lower case script and three (3) registrations for the design of a bear head within a circle. Defendant's Registration No. 624,055 covers "shop equipment, namely, tables, benches, cabinets, racks, shelves, stands, desks and parts thereof" in International Class 20. Defendant's Registration No. 704,529 covers "box trucks, dump trucks, hand trucks, dollies and wheeled platforms, wheeled racks and wheeled tables" in International Class 12. Defendant's Registration No. 704,589 covers "drum lifters, tilting arcs, drum cradles, drum up-enders and hoist hooks" in International Class 7. Registration Nos. 704,588; 704,631; and 704,530 for the bear head in a circle design cover the same goods covered by defendant's '055, '529 and '589 Registrations.

18.    In reliance on defendant's letter of May 30, 2000, plaintiff filed a motion to amend the '625 registration and the '346 application. The motion and amendments were not decided by the TTAB. The amendments delete certain goods, namely, material handling equipment of the type identified in defendant's registrations and in the letter of May 30, 2000. Moreover, the amendments limited plaintiff's channels of trade to woodworking and metal working tools and machinery.

19.    Specifically, in Application Serial No. 76/088,346, the amendment narrows the description of the services and the channels of trade. The beginning of the amended description of the services is as follows:

retail store services, online retail store services, and mail order services featuring **products for woodworking and metal working, namely services featuring . . .**

(Emphasis to show the changes). The amendment also deletes from this application "services featuring dollies, hand trucks, storage bins, tool tables, sliding tables, and material handling equipment, namely carts, casters and wheels, mobile bases, outfeed tables and stands, roller stands, rollers, tables, and work stands."

20. The amendment for Registration No. 2,413,625 narrows the description of services for Class 035 to refer to "mail order services **for products for woodworking and metal working, namely services** featuring . . .". The description of goods in Class 008 has similarly been limited to **woodworking and metal working** hand tools, namely . . . ". The description of goods in Class 009 is now limited to "**Woodworking and metal working** measuring equipment, namely, dial indicators, dial calibrators, digital calipers and instruments, and measuring tapes; software, namely, software for disseminating information related to wood and metal working and wood and metal working equipment through a global information network; magnetic switches."

21. In addition to filing the amendments, plaintiff stopped using the mark GRIZZLY on material handling equipment, and substituted the mark PANTHER.

22. Material handling equipment is a negligible part of plaintiff's business and accounts for less than one-half percent ( ½ %) of plaintiff's annual sales.

23. Plaintiff and defendant advertise and sell in completely different channels of trade to different customers, and the manner and conditions under which plaintiff and defendant sell their respective goods obviates any likelihood of confusion.

24. Both plaintiff and defendant sell expensive goods directly to sophisticated and discriminating purchasers.

25.    Numerous third party registrations demonstrate the lack of exclusivity of defendant's "grizzly" mark and the weakness thereof.

26.    There has been concurrent use for over twenty-three years with eight or less alleged instances of actual confusion.

27.    Defendant's registered marks are (a) the word "grizzly" in lower case script form, and (b) a bear design as follows:



Plaintiff's registrations are for the marks GRIZZLY and GRIZZLY INDUSTRIAL and plaintiff's pending application is for the mark GRIZZLY.COM.

28.    Defendant's registrations are for furniture in Class 20, namely, tables, benches, cabinets, racks, shelves, stands and desks; hand vehicles in Class 12, namely, hand trucks, dollies, wheeled platforms, wheeled tables and wheeled racks; and drum lifters, tilting arcs, drum cradles, drum up-enders and hoist hooks in Class 7.

29.    The description of goods in defendant's registrations do not include the woodworking and metal working tools and machinery covered by plaintiff's application and registrations.

30.    Defendant's registrations do not include any services.

31.    Plaintiff's registrations and pending applications, as amended, cover woodworking and metal working machinery and tools such as saws and drill presses, and retail store services, online retail store services and mail order services featuring products for woodworking and metal working. Plaintiff's registrations and applications, as amended, do not cover any of the goods listed in defendant's registrations.

32.     Plaintiff's and defendant's products are sold in entirely different channels of trade. Plaintiff's and defendant's products are not sold in the same stores, are not sold in the same catalogs, are not sold at the same trade shows, are not advertised in the same publications, and are not sold on the same websites.

33.     Plaintiff's woodworking and metal working products and services are offered exclusively and directly through plaintiff's mail order catalogs, plaintiff's website, plaintiff's toll-free phone order system and three Grizzly Industrial retail showroom stores. Plaintiff's products are not sold through distributors, are not sold to wholesalers, and are not sold in third party catalogs or in any retail stores other than plaintiff's three showroom stores.

34.     Most of plaintiff's orders are from plaintiff's catalogs, and orders are taken mostly over the phone via toll-free numbers from plaintiff's catalogs and advertising.     Plaintiff distributes about two million catalogs annually.     Customers place the call, talk to one of plaintiff's order agents, and place an order.   Plaintiff's customers also mail orders in pre-printed envelopes addressed to plaintiff.   The pre-printed envelopes are included in plaintiff's catalog. Plaintiff also sells over its website which prominently displays plaintiff's name. Finally, plaintiff sells from its three GRIZZLY INDUSTRIAL retail showroom stores.

35.     Defendant displays its products in catalogs, and distributes approximately 15,000 catalogs per year.  Most product catalogs distributed by defendant are sent out in response to a request for a catalog.

36.     Plaintiff and defendant do not attend the same trade shows.  In the over twenty years that plaintiff and defendant have concurrently used their respective marks, plaintiff's president testified that he has never seen defendant at a trade show attended by plaintiff, and

defendant's president testified that he has never seen plaintiff at a trade show attended by defendant.

37.    Plaintiff and defendant do not advertise in the same publications.  Plaintiff has been advertising in woodworking and metal working trade publications since 1983.  Plaintiff has never noticed an advertisement by defendant in any publication in which plaintiff has ever advertised, and defendant has never seen an advertisement for plaintiff's products in any publication in which defendant has ever advertised.

38.    Defendant's customers have not changed since the 1950s when defendant was founded.  Defendant's customers are primarily factories, warehouses and laboratories.

39.    Defendant's phone is answered "Pucel Enterprises."  Defendant's customers often request custom designs.  It is common for defendant's customers to request that defendant incorporate optional features offered by defendant to fit customers' particular needs.

40.    Direct contact with customers is also the manner in which plaintiff's sales are made.  Most of plaintiff's orders are taken over the phone.  At the retail store level, plaintiff's products are sold only in plaintiff's three retail showroom stores.

41.    Plaintiff and defendant target different customers, and their respective customers are sophisticated, discriminating purchasers.  Historically, approximately half of defendant's advertising budget is spent on the Thomas Register.  The Thomas Register is directed to "engineers, industrial companies, manufacturing companies."  The other publications in which defendant advertises are also directed to industrial plants and warehouses.  Defendant's advertising is also directed to the printing industry.  Most of defendant's customers have some level of experience in purchasing products like defendant's, and they know defendant.  The average order from defendant is approximately $500 to $800.

42.     Plaintiff targets homeowners engaged in woodworking and metal working. Woodworking customers account for about 85% of plaintiff's business. Plaintiff's products are not purchased on impulse. Plaintiff's tools and machinery require a significant level of knowledge and skill to operate. Plaintiff advertises a customer service telephone number for customers to use when ordering because customers often ask for the product's specifications or have technical questions about the product they are purchasing.

43.     Moreover, plaintiff's goods are expensive, averaging $200, and 85% of plaintiff's orders are over $150; plaintiff's machinery ranges in price from $100-$40,000.

44.     The term "Grizzly" is commonly used as a trademark. There are at least 28 federal registrations for the mark GRIZZLY and GRIZZLY combined with other words or terms for various types of products, including, but not limited to, the following: Tracker Marine (Grizzly boats), Pentair Pump Group (Grizzly pumps and gears), Grizzly Manufacturing (drill bits), and Yamaha (Grizzly four-wheel all terrain vehicle).

45.     Plaintiff is not aware of even one instance of confusion, i.e., plaintiff never received a purchase order or phone call intended for defendant.

46.     Defendant is not aware of any instance where defendant ever lost a sale to plaintiff, and defendant is not aware of any instance where anyone purchased one of plaintiff's products intending to purchase defendant's product.

47.     The parties have been concurrently and extensively advertising and using their respective marks for over twenty-four (24) years.

## CAUSE OF ACTION
## APPEAL OF TTAB ORDER

48.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 - 47.

49.    The January 16, 2008 decision of the TTAB is a final decision subject to review by the Court under Section 21 of the Trademark Act, 15 U.S.C. § 1071(b).  Plaintiff elects to seek recourse by civil action under 15 U.S.C. § 1071(b) for reversal of the TTAB's decision dated January 16, 2008.  A copy of the decision is attached as Exhibit 1.

50.    Plaintiff asserts that the TTAB erred in sustaining Opposition 91123506 and Cancellation Nos. 92031984, 92032024 and 92032025, and plaintiff seeks review and reversal of the TTAB's decision on the following grounds:

(a)    the TTAB's decision was arbitrary, capricious and an abuse of discretion;

(b)    the TTAB's findings were contrary to the evidence and/or were not supported by substantial evidence, and the TTAB's conclusions of law were clearly erroneous; and

(c)    a de novo review of the TTAB record and additional evidence which plaintiff intends to present to this Court for de novo consideration will be grounds for reversal.

51.    Based on its substantial investment in its GRIZZLY marks for over 25 years, plaintiff has acquired substantial goodwill and recognition in its GRIZZLY marks, and will suffer significant and irreparable damage if it is not allowed to register GRIZZLY.COM and to maintain registrations for its GRIZZLY and GRIZZLY INDUSTRIAL marks.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests that:

A.    Judgment be entered reversing and vacating the TTAB's decision dated January 16, 2008;

B.    The Court find that plaintiff is entitled to register the marks GRIZZLY, GRIZZLY INDUSTRIAL and GRIZZLY.COM for the goods and services described in application Serial No. 76/088,346 and Registration Nos. 2,166,833; 2,312,226; and 2,413,625;

C.    The Court direct the Commissioner of Trademarks, pursuant to 15 U.S.C. § 1071, to grant plaintiff's application, Serial No 76/088,346 for registration of the mark GRIZZLY.COM;

D.    The Court grant plaintiff's motion to amend application Serial No. 76/088,346 and Registration No. 2,413,625; and

E.    The Court grant such other and further relief to which plaintiff is entitled.

Dated:  March 12, 2008                      Respectfully Submitted,

                              /Joseph F. Schmidt
                              Joseph F. Schmidt (Illinois Bar No. 2492180)
                              Michele S. Katz (Illinois Bar No. 6273985)
                              **WELSH & KATZ, LTD.**
                              120 S. Riverside Plaza, 22nd Floor
                              Chicago, IL  60606
                              Phone (312) 655-1500
                              Fax (312) 655-1501
                              E-mail: docket@welshkatz.com
                              E-mail: jfschmidt@welshkatz.com
                              E-mail: mkatz@welshkatz.com
                              *Attorneys for Grizzly Industrial, Inc.*

GRIZZLY INDUSTRIAL, INC. v. PUCEL ENTERPRISES, INC.

**08 C 1483**

## EXHIBIT A TO COMPLAINT

**JUDGE DER-YEGHIAYAN**
**MAGISTRATE JUDGE NOLAN**

<div style="border:1px solid black">

**THIS OPINION IS NOT A PRECEDENT OF THE TTAB**

</div>

Hearing:  September 20, 2007

Mailed:   January 16, 2008

## UNITED STATES PATENT AND TRADEMARK OFFICE

————

## Trademark Trial and Appeal Board

————

Pucel Enterprises, Inc.
v.
Grizzly Industrial, Inc.

————

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

————

Kenneth L. Mitchell of Woodling, Krost and Rust for Pucel Enterprises, Inc.

Joseph F. Schmidt of Michael Best & Friedrich LLP for Grizzly Industrial, Inc.

————

Before Walsh, Mermelstein, and Bergsman, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

In these consolidated proceedings, Pucel Enterprises, Inc. (hereinafter "opposer") filed a notice of opposition and petitions for cancellation to the application and registrations owned by Grizzly Industrial, Inc. (hereinafter "applicant") that are listed below:

1.    Application Serial No. 76088346 for the mark GRIZZLY.COM, in typed drawing form, used in connection with the following services:

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

Retail store services, online retail store services,
and mail order services featuring; abrasives; air
cleaners; air compressors; air tanks; air tools; angle
finders; anti-kickback devices; anti-vibration mounts;
auger bits; bearings; belts; benders; bevels; blade
stabilizers; bolt cutters; books and plans; buffing
compounds; buffing machines; buffing wheels; burrs;
cable ties; calipers; cement; center punches; chain
hoists; chisels; chucks; clamps and vises; clamp heads;
containers; cordless tools; cut-off wheels; cutters;
dial indicators; dies; digital read outs; discs;
dollies; dowel cutting saws; dowel pins; drafting
boards; drill guides; dust collection accessories; dust
pans; dust separators; electric motors; end mill
holders; end mills; engine stands; feather boards; file
card files; filter bags; flexible curves; gauges; gear
puller; gloves; gouges; grinders; grinding wheels;
hacksaws; hammers; hand cleaner; hand punches; hand
screws; hand trucks; hex keys; hose reels; hoses;
inserts for toolholders; jacks; jig saw blades; jointer
knives; knee pads; knobs; laminate trimmer; lathe
accessories; live centers; machine mounts; magnetic
bases; magnetic shims; magnetic switches; mallets;
mandrels; mats; micrometers; miter box; miter trimmer;
mortiser machine; moulder/plane; moulding head;
moulding head knives; multi-spur bits; nail puller;
nailers; nails; notches; planer knives; pliers;
protractor; pulleys; punches; push sticks; rasps;
ratchet kits; remote controller; router pads; router
table; routers; rust remover; safes; sanders; sanding
boxes; sanding sealer; sandpaper; saw blades; saw
stops; saws; scrapers; screw extractors; screw grabs;
screwdrivers; screws; security; shovels; slide tables;
slip rolls; sockets; spacers; spindles; sprayers;
square; stains; staplers; staples; storage bins;
switches; tapping machine; tie down ratchets; tile
cutters; tin snips; tool tables; trammel points;
wagons; welding rod; welding supplies; wood filler;
wrenches; battery chargers; clothing; generators;
levels; parts washers; pressure washers; sandblasters;
saw horses; scaffolding; shop vacuums; tool boxes; tool
organizers; wheel barrows; cutlery; cutting tools;
drill presses; drilling and boring equipment, namely,
brad point bits, countersinks, drill bits, extractors,
forstner bits, hole saws, plug cutters, quick change
bits, reamers, solid carbide bits, spade bits, step
drill bits, tapered bits; dust collection systems;
fasteners; finishing supplies, namely, brushes,

2

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

finishes, finishing supplies, spray guns, sprayers;
hand tools; hardware, namely, brackets, bumpers, door
knockers, drawer pulls, drawer slides, hinges, lock
sets, shelf supports; jigs, fixtures; machine
accessories, namely, arbors, belt pulleys, blade
guides, boring heads, bushings and shapers, chuck
inserts, chucks, clamping kits, collet attachments,
collets, dividing heads, dust hoods, electric switches;
face plates, fences, lathe centers, magnetic chucks,
milling attachments, miter gauge, mortising
attachments, motors, phase converters, power feed,
rails, rotary tables, rub collars, sanding attachments,
sleeves, sliding tables, spindles, stands, tailstock
turrets, tool holders, tool post sets, tool rests, V-
belts, V-blocks, wings, material handling equipment,
namely, carts, casters and wheels, mobile bases,
outfeed tables and stands, roller stands, rollers,
tables, work stands; measuring tools; metal stock;
metalworking machines; pneumatic tools; power tools;
router bits; safety equipment, namely, ear protectors,
eye protection, first aid kits, gloves, respirators;
shaper cutters. shop accessories, namely, anvils, arbor
presses, belt cleaners, dowel centers, glue, glue
bottles, glue brushes, laminating, lubricants, moisture
meters, pads and mats, power bits, push blocks, saw
gauges, sharpening equipment, namely, drill sharpeners,
sharpening stone sets, stop blocks, tape, tweezers;
optical equipment; hand tools; coffee; tooling
equipment, namely, boring bars, center drills,
countersinks, cut-off and parting, dovetail cutters,
end mills, fly cutters, indexable tooling, inserts, key
seats, multi-function tools, rotary burrs, slitting
saws, taps and dies, tool bits; welding and cutting
machines; wood products, namely, biscuits, detail kits,
dowels, edge banding, pins, plugs, veneer; and
woodworking machines, in International Class 35.[1]

2.    Registration No. 2166833 for the mark GRIZZLY, in

typed drawing form, for the following goods:

Woodworking and metal working machinery, namely, table
saws, jointers, shapers, planers, power feeders,
molders, sanders, scroll saws, bandsaws, dust

---

[1] Application Serial No. 76088346, filed July 10, 2000, based on
use in commerce.  Applicant claimed June 30, 1999 as both its
dates of first use anywhere and first use in commerce.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

    collectors, woodworking lathes, metalworking lathes,
drill presses, grinders, buffers, electric motors for
machines, milling machines, power hacksaws, arbor
presses, sheet metal machines, pneumatic air tools,
namely, compressors, wrenches, sanders, die grinders,
ratchets, screwdrivers, drills, spray guns, nailers,
staplers, hammers, saws punches, grease guns and air
brushes, parts washers, cut-off saws, rotary tables,
dividing heads, and parts therefore, in International
Class 7.[2]

    3.    Registration No. 2413625 for the mark GRIZZLY, in

typed drawing form, for the following goods and services:

    Nails; steel squares, in International Class 6;

    Wood and metal working shop machinery, namely, air
cleaners, air compressors and accessories for air
compressors, meat cutting bandsaws, metal cutting
bandsaws, wood bandsaws, buffing machines and buffing
wheels for metal working, drill presses and accessories
for drill presses, dust collectors and accessories for
dust collectors, face plates for lathes bench grinders,
flex shaft grinders, mini grinders, portable grinders,
slow speed grinders, universal knife grinders, wide
wheel grinders, grinding stands, wood lathes and
accessories for wood lathes, lathe chucks, metal lathes
and tooling for metal lathes, mortising machines,
mortising attachments for drill presses, nail guns,
planer knives, belt sanders, bench sanders, combination
sanders, disc sanders, drum sanders, edge sanders,
knife belt sanders, spindle sanders, sanders and
accessories for sanders, sanding belts, sanding discs,
sanding drums, sanding rolls, sanding sleeves, sanding
wheels, saw blades for power operated saws, bandsaw saw
blades, circular saw blades, scroll saw blades, shaper
cutters, shop vacuums, steel squares for machines,
table saws and accessories for table saws, milling
machines, milling vises for milling machines, rotary
tables and angle plates for milling machines, sheet
metal machines for bending, cutting, notching, slip
rolling, and punching flat and tubular sheet metal,
sand blasting machines, welding machines, radial

---

[2] Registration No. 2166833, issued June 23, 1998; Section 8
affidavit accepted.  Applicant claimed September 6, 1983 as both
its dates of first use anywhere and first use in commerce.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

drills, and electric and battery operated power tools,
in International Class 7;

Hand tools, namely, hammers, screwdrivers, chisels,
wood carving knives, pliers, scrapers, hand saws, nail
pullers, sanding blocks, saw blades, saw horses, socket
sets, wrenches, anvils, tap and die sets, in
International Class 8;

Measuring equipment, namely, dial indicators, dial
calibrators, digital calipers and instruments, and
measuring tapes; software, namely, software for
disseminating information related to wood and metal
working and wood and metal working equipment through a
global information network; magnetic switches, in
International Class 9;

Paint brushes, in International Class 16; and,

Mail order services, featuring abrasives, jigs, air
cleaners, air compressors, air compressor accessories,
anti-fatigue mats, aprons, back support belts, meat
cutting bandsaws, metal cutting bandsaws, wood
bandsaws, bandsaw accessories, biscuits, bit systems,
blade cleaners, blade stabilizers, books, brad drivers,
brad point bit sets, buffing compounds, buffing
systems, buffing wheels, carbon paper, center finders,
chisels, band clamps, bar clamps, C-clamps, T-clamps,
hold-down clamps, pipe clamps, saddle clamps, specialty
clamps, cleaners, combination squares, compressors,
contact cement contour gauges, countersink sets, dado
blades, dead blow hammers, depth stops, dovetail jigs,
dowel plugs, doweling jigs, drafting boards, drawer
slides, drill bits and guides, drill presses, drill
press accessories, drill sharpeners, dust collectors,
dust collection accessories, electric motors, emery
clothes, face frame jigs, face plates, featherboards,
files, glues, glue brushes, bench grinders, flex shaft
grinders, mini grinders, portable grinders, slow speed
grinders, universal knife grinders, wide wheel
grinders, grinding stands, grinding stones, grinding
wheels, hack saw kits, handscrews, hinges, hole
restorer tools, hose reels, hollow chisel mortisers,
jigs and fixtures, jointers, jointer clamp systems,
knee pads, knife-setting jigs, wood lathes, metal
lathes, wood lathe accessories, lathe chucks, levels,
lubricants, magnetic switches, magnetizers and
demagnetizers, mallets, marking gauges, measuring

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

tools, miter boxes, miter saw work stations, miter
trimmers, mobile bases, moisture meters, mortising
attachments, moulding heads and knives, multi-spur
bits, nail guns and nails, nail pullers, paint and
stain kits, paint brushes, paint sprayers - HVLP,
planes, planers, planer knives, planer/moulders, planer
pals, plug cutters, pneumatic tools, power carvers,
power feeders, power tools. pressure washers, push
blocks, push sticks, rasps, rasp sets, remote
controllers, right angle drives, roller stands, rosette
cutterheads and cutters, router bits, router bit sets,
router pads, router speed controls, router tables,
router table accessories, rub collars, rub bushings,
rub spacers, rubber gloves, rust removers, safety
equipment, sandblasters, belt sanders, bench sanders,
combination sanders, disc sanders, drum sanders, edge
sanders, knife belt sanders, spindle sanders, sanding
accessories, sanding belts, sanding discs, sanding
drums, sanding rolls, sanding sleeves, sanding wheels,
saw blades, bandsaw saw blades, circular saw blades,
scroll saw blades, saw horse brackets, saw horses,
scaffolding, scrapers, screws, screw accessories,
scroll saws, shapers, shaper cutters, sharpening
accessories, shop vacuums, snips, spokeshaves, spray
guns, staplers, steel squares, step drills, stop
blocks, table saws, table saw accessories, table saw
inserts, table saw fences, tack cloth, tenon cutters,
thickness gauge, toggle clamps, tool organizers,
Trammel points, V-belts, varnishes, vise clamps, vises,
wood parts, wood threading kits, and woodworking
accessories, ordered from printed and on-line catalogs,
in International Class 35.[3]

4.    Registration No. 2312226 for the mark GRIZZLY

INDUSTRIAL, in typed drawing form, for the following goods:

Woodworking and metal working machinery, namely, table
saws; jointers; shapers; planers; power feeders;
molders; sanders; scroll saws; bandsaws; dust
collection systems comprised of dust collectors,
woodworking lathes; metalworking lathes; drill presses;

---

[3] Registration No. 2413625, issued December 19, 2000; Section 8
affidavit accepted.  Applicant claimed December 31, 1983 for both
its dates of first use anywhere and first use in commerce for the
goods and services set forth in Classes 7, 8, 9, 16, and 35, and
it claimed December 31, 1986 as the dates of first use for the
goods identified in Class 6.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

grinders; buffers; electric motors; milling machines; power hacksaws; arbor presses; sheet metal machines; pneumatic air tools, namely, impact wrenches, ratchet wrenches, grinders, drills, sanders, air brushes, staplers, and nailers; parts washers; cut-off saws; and parts therefore, in International Class 7.[4]

As ground for the opposition and cancellations, opposer pleaded priority of use and likelihood of confusion.[5]

Opposer claimed ownership of the following registrations:

1.    Registration No. 0624055 for the mark GRIZZLY, shown below, for "shop equipment, namely, tables, benches, cabinets, racks, shelves, stands, desks, and parts thereof," in International Class 20;[6]



_____

[4] Registration No. 2312226, issued January 25, 2000; Section 8 affidavit accepted.  Applicant disclaimed the exclusive right to use the word "Industrial."  Applicant claimed December 31, 1983 as both its dates of first use anywhere and first use in commerce.  During the prosecution of these proceedings, applicant realized that the dates of first use were incorrect, and, on March 8, 2002, filed a "Request To Amend Certificate Of Registration No. 2,312,226 Pursuant To Section 7(h) Of The Lanham Act."  "The date of first use and first use in commerce for the mark GRIZZLY INDUSTRIAL is August 1997."  (Request To Amend, p. 2).
[5] Opposer also pleaded dilution, but withdrew that claim.
[6] Registration No. 0624055, issued March 27, 1956; Sections 8 and 15 affidavits accepted and acknowledged; third renewal.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

    2.    Registration No. 0704529 for the mark GRIZZLY, shown below, for "box trucks, dump trucks, hand trucks, dollies and wheeled platforms, wheeled racks and wheeled tables," in International Class 12;[7]



    3.    Registration No. 0704589 for the mark for the mark GRIZZLY shown below, for "drum lifters, tilting arcs, drum cradles, drum up-enders, and hoist hooks," in International Class 7.[8]



    4.    Registration No. 0704530 for the mark comprising a grizzly bear design, shown below, for "box trucks, dump

---

[7] Registration No. 0704529, issued September 20, 1960; Sections 8 and 15 affidavits accepted and acknowledged; second renewal.
[8] Registration No. 0704589, issued September 20, 1960; Sections 8 and 15 affidavits accepted and acknowledged; second renewal.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

trucks, hand trucks, dollies and wheeled platforms, wheeled

racks and wheeled tables," in International Class 12;[9]



5.    Registration No. 0704631 for the mark comprising a

grizzly bear design, shown below, for "shop equipment,

namely, tables, benches, cabinets, racks, shelves, stands,

desks and parts thereof," in International Class 20;[10]



6.    Registration No. 0704588 for the mark comprising a

grizzly bear design, shown below for "drum lifters, tilting

arcs, drum cradles, drum up-enders, and hoist hooks," in

International Class 7.[11]

---

[9] Registration No. 0704530, issued September 20, 1960; Sections 8
and 15 affidavits accepted and acknowledged; second renewal.
[10] Registration No. 0704631, issued September 20, 1960; Sections 8
and 15 affidavits accepted and acknowledged; second renewal.
[11] Registration No. 0704588, issued September 20, 1960; Sections 8
and 15 affidavits accepted and acknowledged; second renewal.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025



In our opinion, the most pertinent of opposer's marks

are the  *Grizzly*  marks because they are word marks.

By focusing on the word marks, we can simply compare all of

the "Grizzly" word marks with each other, and we do not need

to consider whether opposer's grizzly bear design marks are

likely to trigger the recollection of the literal

equivalent, or vice versa. Therefore, in the remainder of

our analysis, we will refer only to opposer's "Grizzly" word

marks.


Preliminary Issues

A.   Opposer's Common Law Rights.

Applicant objected to opposer's assertion of common law

rights in its GRIZZLY trademark to prove that opposer's

products and applicant's products and services are related.

Applicant argued that opposer did not plead any common law

rights, and therefore in comparing the goods and services of

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

the parties, the Board should consider only the goods set

forth in opposer's pleaded registrations.[12]

In response to applicant's objection, opposer argued

that it "clearly pleaded" common law rights in paragraph No.

4 of its Amended Notice of Opposition when it referred to

"said above described products" and "said above products and

services sold under, and in association with" opposer's

trademarks.[13]  Opposer made a similar argument regarding its

petitions for cancellation referencing its statements to

"'**previously used**' goods which includes goods beyond the

registrations."[14]  Although opposer did not expressly argue

in the alternative that if the Board did not find that

opposer had pleaded its common law rights, we should find

that opposer's common law rights were tried by implied

consent pursuant to Rule 15(b) of the Federal Rules of Civil

Procedure, opposer did allude to that argument.

Specifically, opposer contended that applicant conducted

discovery in regard to goods and services beyond the scope

of the registrations, that applicant's Rule 30(b)(6)

depositions included inquiries regarding opposer's sale and

advertising of all products and services under opposer's

marks, and that opposer's trial depositions included

---

[12] Applicant's Brief, p. 12.
[13] Opposer's Reply Brief, p. 18.
[14] Opposer's Reply Brief, p. 19 (emphasis in the original).

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

extensive testimony regarding opposer's common use of its

marks.[15]

   1.   <u>Whether opposer pleaded its common law rights</u>.

The pertinent allegations in opposer's Amended Notice

of Opposition may be summarized as follows:

              Paragraph No. 1

       Opposer has been engaged in the
manufacture and sale of material
handling and industrial equipment.

              Paragraph No. 2

       Opposer identified its pleaded
registrations.

              Paragraph No. 3

       Opposer is the owner of the GRIZZLY
trademark for the goods identified in
the pleaded registrations.

              Paragraph No. 4

       "Opposer, for many years and long prior
to the alleged first use or intent to
use 'GRIZZLY.COM' by Applicant, has
become widely known as a source of
Opposer's said above described products
having good quality and has acquired a
favorable reputation for its said above
described products and services sold
under, and in connection with, the
trademarks 'GRIZZLY' and 'GRIZZLY BEAR
SYMBOL'. Opposer has acquired a
favorable reputation and goodwill under
the trademark 'GRIZZLY' AND 'GRIZZLY
BEAR SYMBOL' as a dependable source of
said above described products and
services."

---

[15] Opposer's Reply Brief, pp. 19-20.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

In paragraph No. 1, opposer identified itself as a company engaged in the manufacture and sale of material handling and industrial equipment.  The sale of one's own products is not a separate and distinct service rendered to benefit the public, but rather it is an activity by and for the benefit of the manufacturer.  *In re Dr. Pepper Co.,* 836 F.2d 836, 5 USPQ2d 1207, 1208 (Fed. Cir. 1987) ("the rendering of a services which is normally 'expected or routine' in connection with sale of one's own goods is not a registrable service").  Accordingly, the reference to opposer's "sale of material handling and industrial equipment" in paragraph No. 1 is too vague to put applicant on notice that opposer is claiming trademark rights to services related to the sale of its equipment.

A fair reading of paragraph No. 4, wherein opposer refers to its "said above described products" and "said above described products and services," leads us to conclude that it is a reference to the goods identified in the pleaded registrations set forth in paragraph No. 3.  Opposer did not identify any services that would put applicant on notice that opposer was claiming trademark rights in any activity related to the sale of its products, or that opposer was claiming any trademarks rights in connection

13

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

with any products other than those identified in its pleaded

registrations.

In view of the foregoing, we find that opposer did not

plead any common law rights in its Amended Notice of

Opposition.

The pertinent allegations in Cancellation No. 92031984

may be summarized as follows:[16]

Paragraph Nos. 2-7

Opposer identified its pleaded
registrations.

Paragraph No. 8

Opposer has continuously used its marks
in connection with the goods identified
in its pleaded registrations.

Paragraph No. 11

"The mark registered by Registrant
[applicant], when used on or in
connection with goods cited in the
registrations, is the identical marks
and/or so resembles the previously used
and registered marks by Petitioner
[opposer] for the same or similar goods
so as to cause confusion or to cause
mistake, or to deceive. Further, said
marks registered by Registrant is the
identical mark and/or so resembles the
previously used and registered marks by
the Petitioner for the same or similar
goods so as to cause confusion."

---

[16] The pleadings in Cancellation No. 92031984 are representative
of the pleadings in the other petitions for cancellation.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

Opposer's references to its "previously used and registered marks" in paragraph No. 11 refers to opposer's marks used in connection with the goods identified in its pleaded registrations listed in paragraph No. 8. There is nothing the petition for cancellation that would put applicant on notice that opposer is asserting common law rights. Notice pleading does not require applicant to divine opposer's unstated intentions.

In view of the foregoing, we find that opposer did not plead any common law rights in its petitions for cancellation.

2. Whether opposer's common law rights were tried by applicant's implied consent.

Fed. R. Civ. P. 15(b) provides, in pertinent part, as follows:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues.

Implied consent to the trial of an unpleaded issue can be found only where the nonoffering party (1) raised no objection to the introduction of evidence on the issue, and

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

(2) was fairly apprised that the evidence was being offered
in support of the issue. *Barbara's Bakery, Inc. v.
Landesman*, 82 USPQ2d 1283, 1285 n. 4 (TTAB 2007); *Boise
Cascade Corporation v. Cascade Coach Company*, 168 USPQ 795,
797 (TTAB 1970). Moreover, the nonoffering party may not
stay quiet while evidence is being admitted and subsequently
contend that the matter raised thereby should not be
considered because it was not pleaded. *Cascade Corporation
v. Cascade Coach Company, supra.*

After a thorough review of the record, we find that
opposer's common law use of its GRIZZLY trademark was tried
by the consent of the parties. During his trial testimony,
Robert Mlakar, opposer's Vice President, testified
extensively regarding opposer's common law use of its
GRIZZLY trademarks.[17] Applicant did not at any time during
Mr. Mlakar's deposition object to opposer's introduction of
evidence concerning opposer's common law use of its GRIZZLY
trademarks. In fact, applicant extensively and effectively
cross-examined Mr. Mlakar regarding opposer's common law
use.[18] Under the circumstances of this case, we find that

---

[17] R. Mlakar Trial Dep., pp. 38-110.
[18] R. Mlakar Trial Dep., pp. 238-245. Applicant's counsel
established that, with the exception of a few products, opposer's
purported common law use was for components of opposer's products
rather than products that were separately sold and marked as
GRIZZLY products.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

applicant by its failure to object to Mr. Mlakar's testimony

regarding opposer's common law use of its GRIZZLY trademark

impliedly consented to include opposer's common law use as

part of opposer's case.  Therefore, applicant's objection to

opposer's testimony regarding its common law use of

opposer's GRIZZLY trademark is denied and the pleadings are

considered as having been amended to conform to the

evidence.

B.    Whether acquiescence has been tried by implied consent.

On April 11, 2000, opposer sent applicant a cease and

desist letter demanding that applicant stop using the

trademark GRIZZLY in connection with material handling and

industrial equipment.[19]  In applicant's May 3, 2000

response, applicant denied that there was any likelihood of

confusion because the parties have been concurrently using

the GRIZZLY trademarks in connection with material handling

and industrial equipment for 15 years without any reported

instances of confusion.[20]  Finally, in correspondence dated

May 30, 2000, opposer stated that it did not have a problem

with applicant's use of the GRIZZLY trademark in connection

---

[19] Balolia Discovery Dep., pp. 166-168; Exhibit O/P-24; Balolia
Trial Dep., Exhibit 63; A. Mlakar Discovery Dep., p. 13; Exhibit
R-13.
[20] Balolia Discovery Dep., pp. 166-168; Exhibit O/P-24.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

with woodworking equipment, but inquired further as to the
industrial tools on which applicant had been using the
GRIZZLY mark.[21]

In the discovery deposition of Shiraz Balolia,
applicant's President, Mr. Balolia testified that applicant
did not take any action pursuant to the above-noted exchange
of correspondence with opposer.

Q.    Did you take Ms. Vickroy's letter as a complaint
      lodged by Pucel?

A.    It is a complaint.

Q.    Okay.  And did you take any corrective action in
      regard to that letter?

A.    No.

Q.    No?

A.    No.

Q.    Did you take heed of that letter in any way?

A.    Our attorney has responded to that telling them
      that we don't believe there's basis for a
      complaint.  That's not exact words, but something
      to that effect.

Q.    Well, since the time of Ms. Vickroy's letter of
      April 11th, 2000, did you expand your business in

---

[21] Balolia Trial Dep., Exhibit 64; A. Mlakar Discovery Dep., p. 8;
Exhibit R-14.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

> regard to sales of material handling equipment
>
> under the mark Grizzly?

A.    I already mentioned to you several times that we

do not put the mark Grizzly on our material

handling products.[22]

On the other hand, in his trial testimony, Mr. Balolia
testified that in reliance on the statements made in
opposer's May 30, 2000 correspondence, applicant instructed
its attorney to delete material handling equipment from its
registration.

Q.    And what was  your reaction to this letter?

A.    Well, I didn't didn't (sic) agree with the letter.

And - -

Q.    Well, did you rely on this letter in any way?

A.    Yes, I relied on this letter.  It's coming from

our attorney, obviously, and - -

Q.    Well, did you take some action because of this

letter in connection with how you ran your

business?

A.    Yes.  Like I said, I didn't agree with it, but

since it dealt with a line of products, material-

handling products, that was a negligible part of

our business, less than half a percentage as I've

---

[22] Balolia Discovery Dep., pp. 166-167.

19

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

        testified before, it - - I didn't feel it was

        worth fighting over and - -

Q.    What was worth fighting over?

A.    This issue about material handling, what name to

      put on it, and so on, and what rights their

      clients had.

Q.    So what - - what action did you take as a result

      of this letter?

A.    Well, as a result of this letter, I believe I

      instructed my attorney to amend the registration

      that we had for our Grizzly that included material

      handling, to - - amend it to delete the material-

      handling portions of the registration with the

      trademark office.[23]

                      *     *     *

Q.    And in addition to filing that amendment, what

      else did you do with respect to the use of the

      Grizzly Imports' name on material - - or the

      Grizzly Industrial name on material-handling

      equipment?

---

[23] Balolia Trial Dep., pp. 63-64.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

> A.   We stopped using the Grizzly Imports or Grizzly
>      Industrial name at that point on material handling
>      and started using the name Panther.[24]

Applicant did not plead acquiescence and estoppel as affirmative defenses in any of the consolidated proceedings, nor did applicant seek to amend its pleadings after the close of discovery.  On the other hand, opposer did not object to the introduction into evidence of opposer's April 11, 2000 and May 30, 2000 correspondence during the Balolia trial deposition or to any of the testimony regarding applicant's reliance on the May 30, 2000 correspondence.

Applicant argued that the opposer's May 30, 2000 correspondence proves that opposer "did not object to and acquiesced to [applicant's] use of the marks/names GRIZZLY, GRIZZLY INDUSTRIAL and GRIZZLY.COM in connection with woodworking tools and machinery.  Therefore, [opposer] is now estopped from objecting to [applicant's] registration of [applicant's] marks for woodworking tools and machinery."[25] However, in its Reply Brief, opposer objected to applicant's assertion of the acquiescence affirmative defense because applicant failed to plead it in any of applicant's

---

[24] Balolia Trial Dep., p. 65.  On cross-examination, Mr. Balolia reiterated that in reliance on opposer's May 30, 2000 correspondence, applicant changed the name of its material handling products to Panther.  (Balolia Trial Dep., pp. 87-88).
[25] Applicant's Brief, p. 10.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

answers.[26]  Moreover, opposer argued that the correspondence
applicant relied on to prove acquiescence is opposer's
"offer or promise to furnish a valuable consideration in
compromising or attempting to compromise claims.
[Opposer's] attorney was attempting to investigate and
resolve issues concerning [applicant's] use of the GRIZZLY
mark and thus Fed. R. Evid., R. 408, prohibits its
admissibility into evidence."[27]

Because applicant did not plead acquiescence as an
affirmative defense, we must determine whether acquiescence
was tried by implied consent pursuant to Fed. R. Civ. P.
15(b).  In this case, we do not find that acquiescence was
tried by implied consent.  As indicated in the previous
section of this decision, there are two elements to finding
that an issue has been tried by implied consent:  (1) the
nonoffering party raised no objection to the introduction of
evidence on the issue, and (2) the nonoffering party was
fairly apprised that the evidence was being offered in
support of the issue.  *Barbara's Bakery, Inc. v. Landesman,*
*supra*; *Boise Cascade Corporation v. Cascade Coach Company,*
*supra*.

---

[26] Opposer's Reply Brief, p. 6.
[27] Opposer's Reply Brief, p. 7.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

During his discovery deposition, Mr. Balolia expressly testified that applicant did not take any action in reliance on opposer's May 30, 2000 correspondence.

> Q.    Okay.  And did you take any corrective action in regard to that letter?
>
> A.    No.
>
> Q.    No?
>
> A.    No.[28]

In light of this unequivocal testimony during the Balolia discovery deposition, opposer was within its rights to assume that applicant would not assert any affirmative defense based on the correspondence between the parties. When applicant subsequently decided to change (or clarify) Mr. Balolia's testimony and assert acquiescence as an affirmative defense, applicant had a duty to amend its pleading to insure that opposer was fairly apprised that applicant would be asserting acquiescence.  Because opposer was acting under the assumption that acquiescence was not an issue in these proceedings, when Mr. Balolia testified at trial about the correspondence, opposer was not on notice that they were being introduced to prove acquiescence.

---

[28] Balolia Discovery Dep., pp. 166-167.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

Opposer may have thought that applicant was using them to prove that the goods of the parties were not related.[29]

Under the circumstances of this case, opposer was misled by applicant's discovery testimony and was mistakenly lulled into believing that acquiescence was not an issue in these proceedings. Therefore, opposer was not fairly apprised that the correspondence was being introduced in support of the acquiescence affirmative defense. In view of the foregoing, we do not find that the affirmative defense of acquiescence was tried by implied consent and we give it no further consideration.[30]

---

[29] In opposer's May 30, 2000 correspondence, opposer wrote the following: "While we do not have a problem with your client's use of Grizzly in conjunction with wood-working equipment, we are extremely concerned with and object to your client's crossing into our client's product line." Thus, opposer could reasonably have thought that applicant intended to use the correspondence to prove that woodworking equipment was not related to material handling and industrial equipment.

[30] Assuming that we determined that acquiescence was tried by implied consent, applicant failed to prove the defense. First, the May 30, 2000 correspondence does not constitute conduct or a statement that assents to, encourages, or furthers applicant's use of the GRIZZLY trademark in connection with any goods or services. It is more in the nature of a statement setting out the parameters for a potential resolution, and therefore applicant was not entitled rely or act upon it. Second, because of the discrepancy in Mr. Balolia's discovery testimony and trial testimony, we do not find his trial testimony credible. If Mr. Balolia truly relied on the statements in opposer's May 30, 2000 correspondence (and if those statements were unequivocal statements of assent to applicant's actions), Mr. Balolia would have so indicated in his discovery deposition. Based on applicant's evidence, we do not find that applicant relied on opposer's May 30, 2000 correspondence, and therefore opposer is not estopped from prosecuting these proceedings. Finally, we agree with opposer that its May 30, 2000 correspondence was evidence of conduct or statements made in compromise

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

C.    The expert testimony of Sidney J. Levy, Ph.D.

Applicant took the testimony deposition of Sidney J. Levy, Ph.D, a faculty member in the Marketing Department of Eller College of Management at the University of Arizona.[31] Applicant had requested that Dr. Levy review materials from the parties and provide an opinion regarding whether there is a likelihood of confusion.[32] Dr. Levy opined that the use of applicant's "name, brands, and the URL Grizzly.com is not likely to cause confusion or damage to the reputation of" opposer.[33] At trial, and in its Brief and Reply Brief, opposer objected to Dr. Levy's expert report.

One problem that we have with Dr. Levy's expert testimony and report is that Dr. Levy rendered an expert opinion on the ultimate issue in these proceedings based, essentially, on the same factors the we use to analyze whether there is a likelihood of confusion, subject to the differences discussed *infra*. Applicant is, in essence, asking us to substitute Dr. Levy's findings of fact and conclusions of law for our own. Section 17(a) of the

---

negotiations, and it is therefore not admissible to prove liability or invalidity of a claim pursuant to Fed. R. Evid. 408.
[31] Levy Dep., p. 4; Exhibit 67. Dr. Levy has outstanding credentials in the field of marketing.
[32] Levy Dep., p. 21. Dr. Levy reviewed the amended notice of opposition, the petitions for cancellation, websites of the parties, catalogs, and Thomson & Thomson searches. (Levy Dep., Exhibit 68).
[33] Levy Dep., Exhibit 68.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

Trademark Act of 1946, 15 U.S.C. §1067(a), gives the Board

the authority and duty "to determine and decide the

respective rights of registration."  This duty may not be

delegated by adoption of conclusions reached by a party's

witness. *Steiger Tractor, Inc. v. Steiner Corporation,* 221

USPQ 165, 169 (TTAB 1984); *Medtronic, Inc. v. Medical*

*Devices Inc.,* 204 USPQ 317, 325 (TTAB 1979); *The Mennen*

*Company v. Yamanouchi Pharmaceutical Co., Ltd.,* 203 USPQ

302, 305 (TTAB 1971).

    The preceding cases do not mean that expert witness

testimony may never be helpful.  Fed. R. Evid. 704 provides

that expert witness testimony is not inadmissible because it

embraces an ultimate issue to be decided by the Board.

However, Fed. R. Evid. 702 provides that if scientific,

technical, or other specialized knowledge will assist the

Board to understand the evidence or determine a fact issue,

then expert testimony is appropriate.  In this case, there

is nothing extraordinary regarding the marks, the goods, the

channels of trade, or the sophistication of the purchasers

that requires expert testimony to help us understand the

evidence.

    In this regard, applicant explained that "Dr. Levy's

expertise is the complexity that creates identity in the

marketplace, and he concludes that [opposer] and [applicant]

26

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

'have different identities.'"[34]   However, Dr. Levy reached

his conclusions using different parameters and without the

constraints under which the Board operates.   Two of the

differences between Dr. Levy's and the Board's analysis are

set forth below:

   1.   Dr. Levy noted that opposer often uses its GRIZZLY

trademark in conjunction with or "in a subsidiary way" with

its trade name.   However, Dr. Levy's conception of opposer's

mark is in error.   One of the questions to be decided in

these proceedings is whether applicant's use of GRIZZLY in

connection with the products identified in its application

and registrations so resembles opposer's GRIZZLY trademark,

used in connection with the products identified in opposer's

registrations, as to be likely to cause confusion.   In this

regard, opposer's use of the trade name "Pucel" in

connection with the GRIZZLY trademark is not before us.   The

only marks that concern us are applicant's GRIZZLY

trademarks and opposer's GRIZZLY trademark.   Any affect on

consumer perception caused by opposer's use of the "Pucel"

trade name on packaging and advertising is a question of

unfair competition and it is not relevant to these

proceedings.   *Hershey Goods Corp. v. Cerreta,* 195 USPQ 246,

253 (TTAB 1977); *Purex Corp., Ltd. v. Thompson-Hayward*

---

[34] Applicant's Brief, p. 31.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

*Chemical Co.,* 179 USPQ 190, 191 (TTAB 1973) (any differences

in labeling or the use of additional marks is immaterial and

irrelevant to a determination of applicant's right to the

registration sought); *The Tas-T-Nut Company v. Variety Nut &*

*Date Company,* 128 USPQ 166, 167 n.2 (TTAB 1961); and,

    2.   Dr. Levy analyzed the parties' channels of trade,

nature of their advertising and their presence in the

marketplace and concluded that the products of the parties

move in different channels of trade.[35]  However, Dr. Levy's

testimony is not relevant vis-à-vis the products listed in

opposer's pleaded registrations because our determination of

likelihood of confusion is based on the goods and services

as they are identified in the application and registrations

at issue.  *Hewlett-Packard Co. v. Packard*

*Press Inc.,* 281 F.3d 1261, 62 USPQ2d 1001, 1004 (Fed. Cir.

2002); *In re Elbaum,* 211 USPQ 639, 640 (TTAB 1981); *In re*

*William Hodges & Co., Inc.,* 190 USPQ 47, 48 (TTAB 1976).  We

cannot read any limitations or restrictions into the

description of goods and services.  *Octocom Systems, Inc. v.*

*Houston Computers Services Inc.,* 918 F.2d 937, 16 USPQ2d

1783, 1787 (Fed. Cir. 1990) ("The authority is legion that

the question of registrability of an applicant's mark must

---

[35] Levy Dep., pp. 24-27.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

be decided on the basis of the identification of goods set

forth in the application regardless of what the record may

reveal as to the particular nature of an applicant's goods,

the particular channels of trade or the class of purchasers

to which the sales of goods are directed"); *CBS Inc. v.*

*Morrow,* 708 F.2d 1579, 218 USPQ 198, 199 (Fed. Cir. 1983).

If, as in the case *sub judice,* the application and

registrations at issue describe the goods and services

broadly, and there is no limitation as to their nature or

type, channels of trade or class of purchasers, it is

presumed that the application and registrations encompass

all the goods and/or services of the type described, that

they move in same channels of trade normal for these goods

and/or services, and that they are available to all classes

of purchasers for the described goods and/or services. *In*

*re Linvest S.A.,* 24 USPQ2d 1716 (TTAB 1992). Moreover, our

likelihood of confusion analysis may not be unduly

restricted to present modes of marketing when the

descriptions of goods and services is unrestricted because

such trade practices could be changed by either party when

economics or other factors dictate a need for such change.

*The Wella Corp. v. California Concept Corp.,* 558 F.2d 1019,

194 USPQ 419, 421 (CCPA 1977); *Sheraton Corp. of America v.*

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

*Sheffield Watch Co., Inc.*, 480 F.2d 1400, 178 USPQ 468, 469 (CCPA 1973).  Thus, Dr. Levy analyzed the actual channels of trade and classes of consumers while the Board is constrained to analyze the channels of trade and classes of consumers as identified in the description of goods and services in the application and registrations at issue.

While we do not strike Dr. Levy's expert testimony and report, for the reasons identified above, the testimony offered by Dr. Levy is of no probative value.

D.    Applicant's motion to amend its application and Registration No. 2413625.

Prior to trial, applicant filed a motion to amend its application and Registration No. 2413625 to restrict the description of goods and services to woodworking and metal working products and to delete "dollies, hand trucks, storage bins, tool tables, sliding tables, and material handling equipment, namely, carts, casters, and wheels, mobile bases, outfeed tables and stand, roller stands, rollers, tables, and work stands" from the list of products in the application.[36]  Applicant argued that its motion should be granted because it narrows the scope of the goods and services.[37]

---

[36] Applicant's motion to amend its application and registration, p. 2.
[37] Applicant's motion, p. 3.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

Opposer did not oppose the deletion of the list of specific goods from applicant's application. However, it did object to the proposed restriction to woodworking and metal working products because it "will exacerbate the likelihood of confusion and damage to" opposer.[38] In its trial Reply Brief, opposer expounded on its objection to applicant's proposed amendment to the channels of trade. Opposer argued that even with the proposed amendment there will still be a likelihood of confusion because applicant's application and registrations include products for which opposer has prior common law rights and because applicant's goods and services and opposer's products and related.[39]

"The Board, in its discretion, may grant a motion to amend an application or registration which is the subject of an inter partes proceeding, even if the other party or parties do not consent thereto."[40] While we agree with opposer that the proposed amendment to restrict the channels of trade to woodworking and metal working products will not eliminate the likelihood of confusion because the goods and services will remain related,[41] the amendment does narrow the category of users. Because opposer did not consent to

---

[38] Opposer's brief in opposition to applicant's motion, p. 1.
[39] Opposer's Reply Brief, pp. 8-18.
[40] TBMP §514.03 (2nd ed. rev. 2004), *citing* Trademark Rule 2.133(a), 37 CFR §2.133(a).
[41] See the discussion *infra*.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

the proposed amendment and because applicant did not consent

to judgment on the unrestricted description of goods and

services, the Board's practice is to determine whether there

is a likelihood of confusion with respect to the original

and the amended description of goods and services.

> If the Board ultimately finds that a
> defendant is not entitled to
> registration in the absence of a
> restriction that was timely proposed by
> the defendant, the proposed restriction
> will be approved and entered. . . . If,
> on the other hand, the Board ultimately
> finds that defendant is entitled to
> registration even without the proposed
> restriction, defendant will be allowed
> time to indicate whether it still wishes
> the have the restriction entered.[42]

As indicated above, whether we analyze applicant's

description of goods and services with or without the

restriction to woodworking and metal working products, we

find that applicant's products and services are related to

the goods listed in opposer's registrations.[43]  Accordingly,

we only discuss applicant's proposed revision to its

description of goods and services in the remainder of this

decision.

---

[42] TBMP 514.03 (2nd ed. rev. 2004).
[43] See the discussion *infra*.

32

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

E.   Evidence attached to the briefs.

Both parties submitted evidence with their briefs.
However, a brief may not be used as a vehicle for the
introduction of evidence.  *Hard Rock Café Intentional (USA)
Inc. v. Elsea,* 56 USPQ2d 1504, 1511 (TTAB 2000).  *See also*
TBMP §704.05(b) (2nd ed. rev. 2004) and the cases cited
therein.  Exhibits and other evidentiary materials attached
to the briefs have been given no consideration unless they
were properly made of record during the testimony periods of
the parties.


The Record

By operation of Trademark Rule 2.122, 37 CFR §2.122,
the record includes the pleadings and applicant's
application and registration files.  The record also
includes the following testimony and evidence:

A.   Opposer's evidence.

1.    The discovery deposition of Shiraz Balolia,
applicant's President, with attached exhibits;

2.    The trial deposition of Anthony Mlakar, opposer's
President, with attached exhibits;

3.    The trial deposition of Robert Mlakar, opposer's
Vice President, with attached exhibits, including certified

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

copies of opposer's pleaded registrations showing that the

registrations are subsisting and owned by opposer;

4. Opposer's notice of reliance on applicant's

responses to opposer's interrogatories in the opposition;

and,

5. Opposer's notice of reliance on applicant's

response to opposer's interrogatories in the cancellation

proceedings.

B. Applicant's evidence.

1. The discovery deposition of Anthony Mlakar, with

attached exhibits;

2. The discovery deposition of Robert Mlakar, with

attached exhibits;

3. The testimony deposition of Shiraz Balolia, with

attached exhibits;

4. The testimony deposition of Sydney Levy, Ph.D,

with attached exhibits; and,

5. Applicant's notice of reliance on third-party

registrations for the mark GRIZZLY, in whole or in part.


Standing

Because opposer has properly made its pleaded

registrations of record, opposer has established its

standing. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55

34

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

USPQ2d 1842, 1844 (Fed. Cir. 2000); *Lipton Industries, Inc.
v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185, 189
(CCPA 1982).


<u>Priority</u>

Because opposer's pleaded registrations are of record,
Section 2(d) priority is not an issue in the opposition.
*King Candy Co. v. Eunice King's Kitchen, Inc.,* 496 F.2d
1400, 182 USPQ 108 (CCPA 1974). However, in the
cancellation proceedings, because opposer and applicant are
both owners of registrations, opposer must prove priority of
use. *Henry Siegel Co. v. M & R Mfg. Co.,* 4 USPQ2d 1154,
1160 n.9 (TTAB 1987); *American Standard Inc. v. AQM Corp.,*
208 USPQ 840, 841-842 (TTAB 1980); *SCOA Industries Inc. v.
Kennedy & Cohen, Inc.,* 188 USPQ 411, 413 (TTAB 1975). In
proving its priority of use, opposer may rely upon the
filing date of its applications for registration as evidence
of its use of the mark. *Henry Siegel Co. v. M & R Mfg. Co.,
supra; American Standard Inc. v. AQM Corp., supra.* Opposer
filed its applications to register the GRIZZLY marks on
June 14, 1955 (Registration No. 0624055) and February 23,
1960 (Registration Nos. 0704529 and 0704589). On the other
hand, applicant began using its GRIZZLY mark in commerce in

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

August 1983.[44]  In view thereof, opposer has proven that it

has priority of use with respect to the GRIZZLY trademark

with respect to the goods identified in its pleaded

registrations.[45]


<u>Likelihood of confusion</u>

Our determination of likelihood of confusion under

Section 2(d) of the Lanham Act is based on an analysis of

all the facts in evidence that are relevant to the factors

bearing on the likelihood of confusion issue.  *In re E. I.

du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567

(CCPA 1973).  The relevant *du Pont* factors are discussed

below.

A.    <u>The similarity or dissimilarity of the marks in their
      entireties as to appearance, sound, connotation and
      commercial impression</u>.

We turn first to the *du Pont* factor focusing on the

similarity or dissimilarity of the marks in their entireties

as to appearance, sound, connotation and commercial

impression.  *In re E. I. du Pont De Nemours & Co., supra.*

In a particular case, any one of these means of comparison

---

[44] Applicant's Response to Interrogatory No. 30 in all the
cancellation proceedings; Balolia Trial Dep., p. 9 (Mr. Balolia
founded applicant in 1983);
[45] As discussed *infra,* because we find that applicant's goods and
services are related to the products listed in opposer's pleaded
registrations, we have not considered opposer's common law use.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

may be critical in finding the marks to be similar. *In re Lamson Oil Co.,* 6 USPQ2d 1041, 1042 (TTAB 1988). *See also, In re White Swan Ltd.,* 9 USPQ2d 1534, 1535 (TTAB 1988).

In comparing the marks, we are mindful that the test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression so that confusion as to the source of the goods offered under the respective marks is likely to result. *San Fernando Electric Mfg. Co. v. JFD Electronics Components Corp.,* 565 F.2d 683, 196 USPQ 1, 3 (CCPA 1977); *Spoons Restaurants Inc. v. Morrison Inc.,* 23 USPQ 1735, 1741 (TTAB 1991), *aff'd unpublished,* No. 92-1086 (Fed. Cir. June 5, 1992). The proper focus is on the recollection of the average customer, who retains a general rather than specific impression of the marks. *Winnebago Industries, Inc. v. Oliver & Winston, Inc.,* 207 USPQ 335, 344 (TTAB 1980); *Sealed Air Corp. v. Scott Paper Co.,* 190 USPQ 106, 108 (TTAB 1975).

The word "Grizzly" is the dominant portion of applicant's marks GRIZZLY INDUSTRIAL and GRIZZLY.COM. With respect to GRIZZLY INDUSTRIAL, applicant disclaimed the exclusive right to use "industrial" in response to the Examining Attorney's requirement for a disclaimer on the

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

ground that the word "industrial" is merely descriptive of a

characteristic or function of applicant's woodworking and

metal working machinery.[46]  *In re DNI Holdings Ltd.,* 77

USPQ2d 1435, 1442 (TTAB 2005); *See also Quaker State Oil*

*Refining Corp. v. Quaker Oil Corp.,* 453 F.2d 1296, 172 USPQ

361, 363 (CCPA 1972).  Therefore, the word "Grizzly" is

accorded more weight than the word "Industrial" in our

comparison of the marks.  *In re National Data Corp.,* 753

F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).

With respect to the mark GRIZZLY.COM, the top level

domain ".com" has no source indicating significance and does

not serve any trademark purpose.  *In re CyberFinancial.Net*

*Inc.,* 65 USPQ2d 1789, 1791-1792 (TTAB 2002); *In re Martin*

*Container Inc.,* 65 USPQ2d 1058, 1060 (TTAB 2002).  *See also*

*In re Oppedahl & Larson LLP,* 373 F.3d 1171, 71 USPQ2d 1370

(Fed. Cir. 2004).  Therefore, the word "Grizzly" is accorded

---

[46] February 23, 1998 Office Action in application Serial No.
75303371 (Registration No. 2312226) for the mark GRIZZLY
INDUSTRIAL.  Although statements made in an application may not
be relied on as evidence on behalf of the applicant, they may
used as evidence against applicant as an admission against
interest.  *See* TBMP §704.04 (2nd ed. rev. 2004).  In this case,
applicant's acquiescence to the Examining Attorney's disclaimer
requirement may be construed as an admission that the word
"industrial" used in connection with applicant's woodworking and
metal working machinery is descriptive.  *See American Rice, Inc.,*
*v. H.I.T. Corp.,* 231 USPQ 793,798 TTAB 1986) (the fact that
opposer took position in its application regarding
descriptiveness of term inconsistent with its position in *inter*
*partes* proceeding may be considered as evidence, although earlier
inconsistent position does not give rise to an estoppel).

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

more weight in our analysis that the top level domain ".com."

The significance of the word "Grizzly" as the dominant element of applicant's marks is further reinforced by its location as the first word of the marks. *Presto Products Inc. v. Nice-Pak Products, Inc.*, 9 USPQ2d 1895, 1897 (TTAB 1988)("it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered"). *See also Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin,* 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005)("Veuve" is the most prominent part of the mark VEUVE CLICQUOT because "veuve" is the first word in the mark and the first word to appear on the label); *Century 21 Real Estate Corp. v. Century Life of America, supra* (upon encountering the marks, consumers must first notice the identical lead word).

In view of the foregoing, opposer's *Grizzly* mark and applicant's GRIZZLY mark are essentially identical. The stylization of opposer's mark is not sufficient to distinguish the marks because applicant's marks have been applied for and registered in typed drawing form. By applying and registering its marks as typed drawings, applicant is asserting rights in its marks in any type style, proportions, or other possible variations, including

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

opposer's script format. *Squirtco v. Tomy Corp.*, 697 F.2d
1038, 216 USPQ 937, 939 (Fed. Cir. 1983); *In re Melville
Corp.*, 18 USPQ2d 1386, 1388 (TTAB 1991). Thus, the word
"Grizzly" in applicant's mark must be considered identical
to opposer's GRIZZLY marks. In any event, opposer's script
format is not so distinctive as to create a commercial
impression separate and apart from the word "Grizzly" *per
se*, especially because consumers are unlikely to remember
this distinction between the marks. Rather, it is the word
itself that will more likely be recalled. *In re Melville
Corp.*, *supra*; *In re Appetito Provisions Co.*, 3 USPQ2d 1553,
1554 (TTAB 1987).

In view of the arbitrary nature of the word "Grizzly"
when applied to the products of the parties,[47] the lesser
weight to be accorded the word "Industrial" and the term
".com" in applicant's marks, and the identity of the word
"Grizzly" in the marks at issue, we find that the marks are
similar, if not identical.

B.   The similarity or dissimilarity and nature of the
     goods.

As indicated above, it is well settled that likelihood
of confusion is determined on the basis of the goods as they
are identified in applicant's application and registrations

---

[47] *See* the discussion of the strength of the mark factor *infra*.

40

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

and the cited registrations.  *Hewlett-Packard Co. v. Packard Press Inc., supra; In re Elbaum, supra; In re William Hodges & Co., Inc., supra.*  Moreover, the greater the degree of similarity between the applicant's mark and the mark in the cited registrations, the lesser the degree of similarity between the goods and services in applicant's application and registrations and the cited registrations is required to support a finding of likelihood of confusion.  *In re Opus One, Inc.,* 60 USPQ2d 1812, 1815 (TTAB 2001); *In re Concordia International Forwarding Corp.,* 222 USPQ 355, 356 (TTAB 1983).  If the marks are the same, or almost so, as in the case *sub judice,* it is only necessary that there be a viable relationship between the goods and services to support a finding of likelihood of confusion.  *In re Engine Supply, Inc.,* 225 USPQ 216, 217 (TTAB 1985); *In re Concordia International Forwarding Corp., supra.*  The goods and services of the applicant and the registrant do not have to be identical or directly competitive to support a finding that there is a likelihood of confusion.  It is sufficient if the respective goods and services are related in some manner and/or that the conditions surrounding their marketing are such that they would be encountered by the same persons under circumstances that could, because of the similarity of the marks used in connection therewith, give

41

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

rise to the mistaken belief that they emanate from or are associated with a single source. *In re Albert Trostel & Sons Co.,* 29 USPQ2d 1783, 1785 (TTAB 1993); *In re International Telephone & Telegraph Corp.,* 197 USPQ 910, 911 (TTAB 1978).

The products identified in applicant's application and registrations are woodworking and metal working tools (*e.g.,* table saws, planers, sanders, lathes, etc.) and the services comprise retail store services, mail order services, and online retail store services for woodworking and metal working tools. The cover of applicant's catalogs have the caption "Purveyors of Fine Machinery: High Quality Woodworking and Metalworking Tools & Accessories." The cover of the catalogs "gives anybody looking just at the cover, gives them an idea of what we sell, which is woodworking and metalworking tools."[48]

Opposer has listed the following products in its registrations:

1.    "shop equipment, namely, tables, benches, cabinets, racks, shelves, stands, desks, and parts thereof" (Registration No. 0624055);

---

[48] Balolia Testimony Dep., p. 26; Exhibit 5; Applicant's response to opposer's Interrogatory No. 19(b).

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

2.    "box trucks, dump trucks, hand trucks, dollies and wheeled platforms, wheeled racks and wheeled tables" (Registration No. 0704529); and,

3.    "drum lifters, tilting arcs, drum cradles, drum up-enders, and hoist hooks" (Registration No. 0704589).

Opposer is a manufacturer of shop equipment for material handling such as hand trucks, work benches, stands, dollies, lifts, carts, etc.[49] Opposer's products include, but are not limited to, shop desks, work benches, tool cabinets, heavy duty tool stands, heavy duty shop trucks, hand trucks, dollies, storage racks, and drum lifters (i.e., hoists used to lift drums).[50] For example, opposer's PTC Series tool cabinet workbench is a workbench with a 9-drawer tool cabinet for the storage of tools, parts, and other items.[51]

Although the products listed in the respective description of goods and services are not identical, and they are not interchangeable, the products of the parties are complementary because they can be used together.  It does not take much imagination to envision applicant's saws, lathes, planers, etc. being used in connection with opposer's work benches, and applicant's hammers, nails, saw

---

[49] R. Mlakar Trial Dep., Exhibits 13-16, 21-30.
[50] Id.
[51] R. Mlakar Trial Dep., Exhibit 29, p. 8.

43

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

blades, and hand tools, etc. being stored in opposer's tool
cabinets.  Complementary use is recognized as a relevant
consideration in determining likelihood of confusion.  *In re
Martin's Famous Pastry Shoppe, Inc.,* 748 F.2d 1565, 223 USPQ
1289, 1290 (Fed. Cir. 1984); *Visual Information Institute v.
Vicon Industries*, 209 USPQ, 179, 190 (TTAB 1980).  In fact,
in his discovery deposition, Mr. Balolia testified that
material handling equipment, specifically roller stands, and
mobile bases, are complementary to applicant's core
products.[52]  Subsequently, during his trial deposition, Mr.
Balolia testified that applicant's customers have requested
material handling equipment to complement applicant's core
products.

> Q.    And why do you - - well, why does Grizzly
>       Industrial sell material handling equipment?
>
> A.    Essentially as an accommodation to our customers,
>       just as a service.  It's not - - you know,
>       customers asked us for - - for certain products,
>       material handling products to complement the
>       machinery that we sold and to buy from the same
>       company at the same time.[53]

---

[52] Balolia Discovery Dep., pp. 27-28; Balolia Trial Dep., Exhibit
1.  Mobile bases are synonymous with racks with wheels.  (R.
Mlakar Trial Dep., p. 189).
[53] Balolia Trial Dep., p. 61.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

Moreover, opposer and applicant both sell carts, two-wheel dollies, drum dollies, storage bins, workbenches, tool stands.[54] The fact that applicant and opposer both sell the same products, albeit under different marks,[55] has a bearing on whether consumers believe, when the products do appear under the same mark, that they have the same source. *Sterling Drug Inc. v. Sebring,* 515 F.2d 1128, 185 USPQ 649, 652 (CCPA 1975); *Black and Decker Mfg. Co. v. Bright Star Industries, Inc.,* 220 USPQ 890, 892 (TTAB 1983).

In view of the foregoing, we find that the products and services of the parties are related.

C.    The similarity or dissimilarity of established, likely-to-continue trade channels and classes of purchasers.

As we noted in our discussion regarding Dr. Levy's testimony, if the application and registrations at issue describe the goods and services broadly, and there is no limitation as to their nature or type, channels of trade or class of purchasers, it is presumed that the application and registrations encompass all the goods and/or services of the type described, that they move in same channels of trade

---

[54] Balolia Discovery Dep., pp. 28-30; Balolia Testimony Dep., p. 61
[55] In his discovery deposition, Mr. Balolia testified that applicant sold material handling equipment with the mark GRIZZLY INDUSTRIAL (Balolia Discovery Dep., pp. 12-13), however, in his trial testimony, Mr. Balolia testified that applicant now sells its material handling equipment under the PANTHER trademark (Balolia Trial Dep., pp. 61-62).

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

normal for these goods and/or services, and that they are available to all classes of purchasers for the described goods and/or services.  *In re Linvest S.A., supra*. Moreover, our likelihood of confusion analysis may not be unduly restricted to present modes of marketing when the descriptions of goods and services is unrestricted because such trade practices could be changed by either party when economics or other factors dictate a need for such change. *The Wella Corp. v. California Concept Corp., supra*; *Sheraton Corp. of America v. Sheffield Watch Co., Inc., supra*.

Because the goods of the parties are broadly identified, without any restrictions or limitations as to channels of trade or classes of consumers, we must presume that applicant and opposer sell their products in all the normal channels of trade for these products (*e.g.*, retail store services, mail order services, Internet, distributors, etc.) to all classes of consumers who would buy such products.  Accordingly, applicant's evidence regarding the different methods of distribution used by the parties is not relevant.[56]

---

[56] Mr. Balolia's testimony that the parties sell their products in different channels of trade is not credible because applicant also sells the same type of material handling equipment sold by opposer.  (Balolia Trial Dep., p. 61).

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

Moreover, even if applicant's evidence regarding the different methods of distribution used by the parties was relevant, we would not find it persuasive because applicant's channels of trade argument is based on the false premise that the end users of the products are different. The evidence shows that applicant sells its products directly to end users (*e.g.*, homeowners, small shops, as well as the "readily-identified, well-known companies"[57] identified in applicant's catalogs) through its retail stores, mail order services, and online sales.[58] By the same token, opposer sells its products through online sales.[59] In addition, many of opposer's distributors sell opposer's products through catalogs.[60] Opposer's products are also purchased by engineers and purchasing agents through the Thomas Register.[61] Beside the fact that both parties sell their products online and through the mail, opposer's distributors sell its products to end users[62] who could be anyone, including applicant's customers, such as

---

[57] Applicant characterized the sampling of its customers identified on page 3 of its catalogs as "readily-identified, well-known companies." (Balolia Trial Dep., p. 73).
[58] *See also* Balolia Discovery Dep., pp. 90-93, 142-143; Applicant's response to opposer's Interrogatory No. 22.
[59] A. Mlakar Discovery Dep., pp. 18-22; R. Mlakar Discovery Dep., p. 19.
[60] A. Mlakar Discovery Dep., pp. 21-22.
[61] A. Mlakar Discovery Dep., p. 20.
[62] R. Mlakar Discovery Dep., p. 64.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

home shops, small shops, or industrial purchasers.[63]  The
problem with applicant's argument is that it ignores sales
of opposer's products beyond its distributors.  Even where
goods are sold through a distributor, rather than directly
to end users, the ultimate sale to end users remains highly
relevant in a likelihood of confusion analysis.  That the
goods of one party pass through an intermediary on the way
to the end user has little relevance if the result is that
they eventually end up in the hands of the same consumers.

    In that regard, the most significant fact in the
channels of trade analysis in these proceedings is that the
same consumers may ultimately purchase both applicant's and
opposer's products.  As indicated *supra,* likelihood of
confusion may be found where the conditions surrounding the
marketing of the parties' products are such that they would
be encountered by the same persons under circumstances that
could give rise to the mistaken belief that they emanate
from the same source.  *In re Albert Trostel & Sons Co.,*
*supra*; *In re International Telephone & Telegraph Corp.,*
*supra*.  Opposer sells its products to metal workers and
woodworkers.[64]  In fact, opposer sells to almost all of the
customers that applicant identifies as representative

---

[63] R. Mlakar Discovery Dep., p.p. 75-76.
[64] R. Mlakar Trial Dep., pp. 147-149.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

customers in its catalogs.[65]  By the same token, the

majority of applicant's customers are woodworkers

comprising homeowners with small shops and cabinet shops.[66]

In addition, applicant sells its metalworking products to

small repair shops, small machine shops, and homeowners.[67]

While there may be some differences in how the parties

actually sell their products, it cannot be denied that the

products of the parties reach the same consumers.

In view of the foregoing, we find that the channels of

trade and classes of consumers are similar.

D.     The conditions under which and buyers to whom sales are
made (i.e., the degree of consumer care).

Applicant contended that the customers of the parties

exercise a high degree of consumer care when purchasing

applicant's woodworking or metal working machinery or

opposer's material handling and industrial equipment, and

---

[65] R. Mlakar Trial Dep., pp. 149-163; Exhibits 68 (applicant's
2005 catalog) and 34 and 37 (opposer's invoices).  Although
applicant objected to opposer's Exhibits 34 and 37 at the
deposition of R. Mlakar, it did not renew that objection in its
brief, and we therefore consider it waived.  *Hard Rock Café
International (USA) Inc. v. Elsea,* 56 USPQ2d 1504, 1507 n.5 (TTAB
2000) (objection to exhibit raised during deposition but not
maintained in brief deemed waived); *Reflange Inc. v. R-Con
International,* 17 USPQ2d 1125, 1126 n.4 (TTAB 1990).  *See also*
TBMP §707.04 (2nd ed. rev. 2004).  Applicant explained that the
sample customers identified in its catalogs are "readily-
identified, well-known companies" "to inspire confidence in our
customers . . . if large corporations like this buy Grizzly
Industrial products, well they must be good-quality products."
(Balolia Trial Dep., p. 73).
[66] Balolia Trial Dep., p. 74.
[67] *Id.*

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

therefore the likelihood of confusion will be minimal.[68]

Applicant supported its argument by referencing the prices
of the products and the process by which the products are
purchased.  Applicant's products range in cost from $100 to
$20,000 with an average price of $200.[69]  In addition,
applicant provides a customer representative on its toll-
free telephone ordering system to answer technical
questions.[70]  Opposer's products average $500 to $800.[71]
However, Mr. Mlakar testified that the degree of care
exercised by opposer's consumers varies.[72]

It seems implausible the someone purchasing the
products of either party would not exercise a heightened
degree of care.  The products are not everyday purchases.
They are specific "shop" equipment or tools purchased for a
specific purpose.  On the other hand, the fact that the
parties' consumers may be exercising a heightened degree of
care and may even have a high level of sophistication in the
field does not provide any assurance that the consumers and
potential consumers are sophisticated or knowledgeable
regarding trade identifications, or have such goods memories
for minute differences in marks, that they could

---

[68] Applicant's Brief, pp. 44-47.
[69] Balolia Discovery Dep., p. 104; Balolia Trial Dep., p. 76.
[70] Balolia Trial Dep., p. 75.
[71] R. Mlakar Trial Dep., p. 248.
[72] R. Mlakar Trial Dep., p. 248.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

differentiate between the parties' marks or appreciate that

their similarity does not imply some of kind of business

relationship or affiliation. *Medtronic, Inc. v. Medical*

*Devices, Inc.*, 204 USPQ 317, 326 (TTAB 1979); *Hydrotechnic*

*Corporation v. Hydrotech International, Inc.*, 196 USPQ 387,

393-393 (TTAB 1977). This is especially true in a case like

this where the marks are essentially identical and the goods

and services are closely related.

In these proceedings, the evidence regarding the degree

of care with which the ultimate consumers of the parties

consider the trademarks or the source of the machinery and

equipment sold by the parties was not developed in

sufficient detail to permit us to draw any conclusions

regarding the degree of consumer care. Accordingly, this *du*

*Pont* factor is neutral.

E.    The strength of opposer's mark.

Applicant argued that because GRIZZLY has been

registered numerous times for a wide variety of goods and

services that opposer's GRIZZLY marks are weak, and are

entitled to only a narrow scope of protection or exclusivity

of use.[73] In support of this argument, applicant submitted

copies of twenty-eight (28) different registrations

---

[73] Applicant's Brief, pp. 52-53.

51

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

consisting of the word "Grizzly" for a wide variety of goods and services.

Generally, third-party registrations, in and of themselves, cannot justify the registration of another mark that is so similar to a previously registered mark as to cause a likelihood of confusion. Third-party registrations are not evidence of what happens in the market place or that consumers are familiar with the marks. To the extent that such third-party registrations have any probative value in the likelihood of confusion analysis, they are relevant to show that the mark, or a portion of a mark, is descriptive or suggestive, and that therefore the public will look to other elements to distinguish the source of the products identified in the registrations. *AMF Inc. v. American Leisure Products, Inc.*, 474 F.2d 1403, 177 USPQ 268, 269-270 (CCPA 1973); *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.* 748 F.2d 669, 223 USPQ 1281, 1285 (Fed. Cir. 1984). Thus, third-party registrations may be used like dictionaries to demonstrate that the mark conveys a specific meaning. *Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 189 USPQ 693, 694-695 (CCPA 1976); *In re Melville Corp.*, 18 USPQ2d 1386, 1388 (TTAB 1991); *Plus Products v. Star-Kist Foods, Inc.*, 220 USPQ 541, 544 (TTAB 1983).

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

The third-party registrations do not show that the word "Grizzly" is suggestive of opposer's material handling or industrial equipment, nor does applicant assert that "Grizzly" is suggestive.  The twenty-eight (28) third-party registrations of record are for a wide range of products in disparate fields (*e.g.,* waste treatment equipment, tires, weightlifting equipment, farm equipment, etc.).  The disparate nature of the goods in the third-party registrations do not shed any light on what common significance the word "Grizzly" might have for these different goods, or for opposer's identified goods.  Accordingly, we do not believe that opposer's mark has been shown to be weak.

Moreover, even if we were to deem the protection accorded opposer's mark as being more limited than that for an inherently strong mark, the protection still extends to prevent the registration of marks that convey the same commercial impression and that is used for related goods.  Likelihood of confusion "is to be avoided, as much between 'weak' marks as between 'strong' marks."  *King Candy Co. v. Eunice King's Kitchen, Inc.,* 496 F.2d 1400, 182 USPQ 108, 109 (CCPA 1974).

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

F.   <u>The nature and extent of any actual confusion</u>.

Opposer argued that the following exhibits constitute evidence of actual confusion (our analysis of the probative value of each exhibit is set forth immediately after the identification of the exhibit):

Exhibit 44

Opposer's catalog request form, dated September 9, 2003, wherein the company requesting the catalog told opposer's telephone operator that it had bought welding benches from Grizzly Industrial.[74] In Exhibit 44, the requestor had previously bought a product from applicant.  We can infer from this exhibit that because of the identity of the marks and complementary nature of the products, the requestor mistakenly believed that there was an association between the parties;

Exhibit 45

A fax, dated August 27, 2003, from one of opposer's distributors requesting a quote for a number of products identified by the GRIZZLY trademark.  Many of the products listed are not manufactured by opposer, but may be found in applicant's description of goods (*i.e.*, lathes,

_____

[74] A. Mlakar Trial Dep., pp. 47-48.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

shapers, cutters, and spindle sanders).[75]

Although we cannot be sure that the distributor requesting a quote had confused the parties, we can infer from this exhibit that because of the identity of the marks and complementary nature of the products the distributor mistakenly believed that there was some association between the parties;

Exhibit 46

A photocopy of a page from applicant's website depicting a shelf cart that one of opposer's customers faxed to opposer inquiring "can you come up with anything?"[76]  Exhibit 46 is not evidence of actual confusion because opposer's customer is inquiring whether opposer has a similar product and the customer is not showing any confusion as to the source of the product displayed in the fax;

Exhibit 47

Opposer's catalog request form, dated October 17, 2000, indicating that the caller was looking for Grizzly Industrial.[77]  We infer from this exhibit that the caller contacted opposer instead of

---

[75] A. Mlakar Trial Dep., pp. 48-51.
[76] A. Mlakar Trial Dep., pp. 51-52.
[77] A. Mlakar Trial Dep., pp. 52-53.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

applicant because of the similarity of the

trademarks;

Exhibit 48

Correspondence from Industrial Appraisal Company,

dated August 16, 2000, to opposer requesting the

selling price of a "Grizzly Spindle sander" for an

insurance valuation appraisal.  Opposer does not

sell sanders, but they are listed in applicant's

description of goods.  Industrial Appraisal

Company is not a purchaser or potential purchaser

of the parties' products so it would not exercise

the same degree of care as potential purchaser.

However, the misdirected communication comprising

Exhibit 48 is illustrative of the type of

confusion that may occur because of the identify

of the marks and complementary nature of the

goods;

Exhibit 49

A fax, dated October 4, 2000, from Supply Depot

Incorporated, addressed to Grizzly Industrial

requesting a quote for tools manufactured by

applicant (e.g., router, sander, jig saw, table

saw, etc.).[78]  This communication appears to be

---

[78] A. Mlakar Trial Dep., pp. 55-56.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

misdirected correspondence sent to opposer because

of the similarity of the trademarks;

Exhibit 50

A copy of a request for a quote from Find MRO.com,

dated May 16, 2001, for the type of equipment that

is manufactured by applicant (*i.e.*, gauge sets,

thread restorers, replacement blades, tap stick,

and a circle marker set).[79]  The request for a

quote is addressed to Pucel Enterprises, and there

is no reference to the trademark "Grizzly."

Without testimony from the contact at Find

MRO.com, we cannot draw any inferences regarding

whether it mistakenly believed that there was an

association between the parties; and,

Exhibit 51

A copy of a purchase order for drawers.  However,

because Mr. Mlakar could not testify as to whether

it was or was not for opposer's products or

applicant's products, Exhibit 51 is not evidence

of actual confusion.[80]

Applicant argued that in light of the facts that the

parties have concurrently and extensively used and

---

[79] A. Mlakar Trial Dep., p. 56.
[80] A. Mlakar Trial Dep., pp. 56-57.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

advertised their marks on a national basis for twenty-three

(23) years,[81] opposer's five (5) credible instances of

actual confusion are *de minimis*.[82]

On the one hand, the above-noted five credible

instances of actual confusion do not prove that someone

bought applicant's products believing it to be opposer's

products or vise versa, nor are only five credible instances

of confusion especially impressive under the circumstances.

On the other hand, the evidence demonstrates that because of

the similarity of the marks and the complementary nature of

the goods potential consumers have mistakenly believed the

products and services emanate from the same source.  While

the relevant standard is likelihood of confusion, not actual

confusion, any instances of actual confusion are clearly

---

[81] The record clearly establishes that there has been ample
opportunity for actual confusion to arise.  Applicant has an
average of 1.5 million customers per year.  (Balolia Trial Dep.,
p. 12).  It ships over 500,000 orders annually. (Balolia Trial
Dep., pp. 40-41).  Since 1996, applicant has been distributing
approximately 2 million catalogs a year, and since 1983, it has
distributed a total of approximately 25 million catalogs.
(Balolia Trial Dep., pp. 17 and 40).  Applicant's sales have
grown from $1 million per year in 1983 to over $100 million per
year in 2005.  (Balolia Trial Dep., pp. 13-15; Exhibit 67).
Opposer distributes approximately 15,000 catalogs per year.  (R.
Mlakar Trial Dep., p. 140).  It has approximately 2,500
distributors, some of whom display opposer's products in their
catalogs.  (R. Mlakar Trial Dep., pp. 141-142).  One of opposer's
distributors, SMO, distributes over 1 million catalogs a year.
(R. Mlakar Trial Dep., p. 143).  In addition, some distributors
link to opposer's website.  (R. Mlakar Trial Dep., pp. 143-145).
Opposer also advertises in the Thomas Register. (A. Mlakar Trial
Dep., p. 22).
[82] Applicant's Brief, pp. 27-28.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

probative of whether confusion is likely. Accordingly, we find that this *du Pont* factor favors finding that there is a likelihood of confusion.

G.   Balancing the factors.

The *du Pont* factors require to us to consider the thirteen factors for which evidence has been made of record. The Court of Customs and Patent Appeals, the predecessor to our reviewing court, has observed that "[t]he fundamental inquiry mandated by §2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks." *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976). Because of the identity of the marks, the similarity of the goods set forth in each application and registration owned by both parties, and the absence of any evidence that militates against confusion, we conclude that applicant's GRIZZLY mark, as applied to applicant's woodworking and metal working machinery and tools and related services, so resembles opposer's GRIZZLY marks, as applied to material handling and industrial equipment, as to be likely to cause confusion.

Decision:  The opposition is sustained and application Serial No. 76088346 is refused registration.

Opposition No. 91123506
Cancellation No. 92031984
Cancellation No. 92032024
Cancellation No. 92032025

The petitions for cancellation are granted and the

registrations will be cancelled in due course.