IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GRIZZLY INDUSTRIAL, INC. | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant | ) | |
| | ) | Civil Action No. 08 C 1483 |
| v. | ) | |
| | ) | Hon. Samuel Der Yeghiayan |
| PUCEL ENTERPRISES, INC., | ) | Magistrate Judge Nan Nolan |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | JURY TRIAL DEMANDED |

## ANSWER AND COUNTERCLAIMS OF DEFENDANT/COUNTERCLAIM PLAINTIFF (COUNTERCLAIMANT) PUCEL ENTERPRISES, INC.

## ANSWER TO COMPLAINT

Now comes defendant and counterclaim plaintiff, Pucel Enterprises, Inc. (hereinafter "Pucel"), by and through its attorneys and answers the Complaint filed by Grizzly Industrial, Inc. (hereinafter "Grizzly Industrial") as follows:

**STATUTORY BASIS AND NATURE OF ACTION**

1.     By this action, pursuant to 15 U.S.C. § 1071(b)(1) of the Federal Trademark Act, plaintiff seeks judicial review and reversal of the Decision of the Trademark Trial and Appeal Board (the "TTAB" or the "Board") dated January 16, 2008, including, but not limited to, reversal of the following TTAB findings and rulings:

(a)     Granting Opposition No. 91123506, and refusing registration of plaintiff's application Serial No. 76/088,346 (hereafter "'346") for the mark GRIZZLY.COM.

(b)     Granting petition for Cancellation No. 920331984 and ordering that plaintiff's Registration No. 2,166,833 (hereafter "'833") for the mark GRIZZLY be cancelled.

1

(c)     Granting petition for Cancellation No. 92032024 and ordering that plaintiff's Registration No. 2,413,625 (hereafter "'625") for the mark GRIZZLY be cancelled.

(d)     Granting petition for Cancellation No. 92032025 and ordering that plaintiff's Registration No. 2,312,226 (hereafter "'226") for the mark GRIZZLY INDUSTRIAL be cancelled.

(e)     That defendant's unpled common law use of its GRIZZLY trademark was tried by the implied consent of the parties, pursuant to F.R.C.P. 15(b).

(f)     That plaintiff's unpled acquiescence defense was not tried by implied consent, pursuant to F.R.C.P. 15(b).

(g)     That defendant's cease and desist letter of May 30, 2000 was not admissible to prove acquiescence, estoppel and laches on the ground that said letter was a settlement communication pursuant to F.R.C.P. 408.

(h)     That five (5) instances of confusion [over a period of approximately twenty (20) years of concurrent use] are probative of whether confusion is likely.

(i)     That there is a likelihood of confusion between plaintiff's and defendant's respective marks for goods and services described in plaintiff's application and registrations and the goods described in defendant's registrations.


ANSWER: Pucel admits that this purports to be an action by the plaintiff which seeks judicial review and reversal of the Decision of the Trademark Trial and Appeal Board (the "TTAB" or the "Board") dated January 16, 2008 under 15 U.S.C. § 1071(b)(1) of the Federal Trademark Act. To the extent that any or all of the recitals (a)-(i) attributable to the TTAB's decision is/(are) taken out of context, is/(are) incomplete and/or is/(are) mischaracterized, it/(they) is/(are) denied

2

as the decision speaks for itself. The decision of the TTAB should be affirmed in its entirety and to the extent that paragraphs 1 (a)- 1 (i) are allegations they are denied.

    2.      Plaintiff also seeks a determination and ruling by the Court as to the following:

    (a)      That the testimony offered by Dr. Levy [plaintiff's marketing expert] is relevant and probative.

    (b)      Granting plaintiff's motion to amend application Serial No. 76088346 and Registration No. 2413625 to narrow the description of goods by deleting material handling equipment, and narrowing plaintiff's channels of trade by limiting the goods and services to products and services for woodworking and metal working.

    (c)      That defendant's cease and desist letters to plaintiff dated April 11, 2000 and May 30, 2000 constitute acquiescence and estoppel.

    (d)      That defendant's cease and desist letters to plaintiff dated April 11, 2000 and May 30, 2000 were not evidence of conduct or statements made in comprise negotiations.

    (e)      That plaintiff's and defendant's established trade channels and classes of purchasers are different.

    (f)      That the conditions under which sales are made preclude any likelihood of confusion.

    (g)      That the high degree of care exercised by plaintiff's and defendant's respective customers in purchasing plaintiff's and defendant's respective products precludes a likelihood of confusion.

    (h)      That defendant's mark is weak and only entitled to a narrow scope of protection.

ANSWER: Pucel admits that this purports to be an action by the plaintiff which seeks judicial review and reversal of the Decision of the Trademark Trial and Appeal Board (the "TTAB" or the "Board") dated January 16, 2008 under 15 U.S.C. § 1071(b)(1) of the Federal Trademark Act. To the extent that any or all of the recitals (a)-(h) attributable to the TTAB's decision is (are) taken out of context, is (are) incomplete and/or is (are) mischaracterized, it (they) is (are) denied as the decision speaks for itself. The decision of the TTAB should be affirmed in its entirety and to the extent that paragraphs 2 (a)-2 (h) are allegations they are denied.

**THE PARTIES**

3.    Plaintiff GRIZZLY INDUSTRIAL, INC. is a Washington corporation located in Bellingham, Washington. Plaintiff is engaged in the business of manufacturing, distributing and selling metal and woodworking machines and equipment.

ANSWER: Admitted that Grizzly Industrial is a Washington corporation; denied for lack of knowledge that Grizzly Industrial is engaged in the business of manufacturing metal and woodworking equipment; denies for lack of knowledge that Grizzly Industrial is a distributor; admitted that Grizzly Industrial sells some metal and woodworking machines and equipment but denied insofar that the allegation implies a complete description of what Grizzly Industrial sells.

4.    Defendant PUCEL ENTERPRISES, INC. is an Ohio corporation located in Cleveland, Ohio, and is engaged in the business of manufacturing, distributing and selling material handling equipment throughout the United States, including this district.

ANSWER: Admitted.

4

**JURISDICTION AND VENUE**

5.      Jurisdiction is expressly conferred on this Court under 15 U.S.C. §§ 1121 and
1071(B) and 28 U.S.C. §§ 1331 and 1338(a).

ANSWER: Admitted.

6.      Personal jurisdiction over defendant is vested in this Court since defendant has
been and continues to engage in business in this district.  In further support of jurisdiction,
plaintiff alleges as follows:

(a)      Defendant distributes its products nationwide in all fifty states, including in the
Northern District of Illinois.

(b)      One of defendant's largest customers is located in this district, and defendant has
sold its products to this customer for the past 10 to 15 years.  Defendant's customers also include
in excess of five other large, well-known corporations located in this district.

(c)      Defendant owns and operates a website, www.pucelgrizzly.com, which allows
customers nationwide, including in the State of Illinois, to configure their orders, obtain quotes,
and subsequently place orders to purchase defendant's products via the internet.

ANSWER: Admitted, with the exception that the website operated by Pucel is www.pucel-
grizzly.com.

7.      Venue is proper in the United States District Court for the Northern District of
Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of
the events occurred in this district and defendant is subject to personal jurisdiction herein.

ANSWER: Admitted.

BACKGROUND

8.     The TTAB decision dated January 16, 2008, relates to a consolidated proceeding involving one opposition and three cancellation actions, in which defendant, Pucel Enterprises, Inc., was the opposer/petitioner, and plaintiff, Grizzly Industrial, Inc., formerly Grizzly Imports, Inc., was the applicant/registrant.

ANSWER: Admitted.

9.     The founder, owner and current president of plaintiff founded Grizzly Imports, Inc. in 1983. In 1997, Grizzly Imports, Inc. changed its name to Grizzly Industrial, Inc. Since 1983, Plaintiff has been continuously selling woodworking and metal working tools and machinery under the name and mark Grizzly.

ANSWER: Admitted insofar as Shiraz Balolia founded Grizzly Imports, Inc. in 1983 and then changed its name to Grizzly Industrial, Inc. in 1997. Denied based on lack of knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations that Grizzly Industrial has been continuously selling woodworking and metal working tools and machinery under the name and mark Grizzly since 1983, however admitted based on information and belief that Grizzly Industrial has been continuously selling woodworking and metal working tools and machinery as well as other items under the name and mark since at least as early as 2000.

10.     Defendant is engaged in the business of manufacturing and selling cabinets, tables, dollies and hand trucks. Defendant sells its products under the names Pucel Enterprises, Pucel, Pucel/grizzly, and grizzly equipment.

ANSWER: Denied. Pucel uses the registered word mark GRIZZLY and the GRIZZLY BEAR

SYMBOL on its entire line of material handling equipment and industrial equipment and not just

cabinets, tables, dollies and hand trucks.

11.    Plaintiff is the owner of U.S. Registration No. 2,166,833, dated June 23, 1998, for

the mark GRIZZLY for woodworking and metal working machinery in International Class 7.

The underlying application was filed in 1996 and was published for opposition on September 16,

1997. The application alleged a date of first use of 1983. Defendant did not oppose the

application from which this registration issued.

ANSWER: Admitted.

12.    Plaintiff is the owner of U.S. Registration No. 2,413,625, dated December 19,

2000, for the mark GRIZZLY for woodworking and metal working machinery and tools, e.g.,

saws and drill presses in International Classes 6, 7, 8, 9 and 16, and mail order services for

woodworking and metal tools and machinery in Class 35. The underlying application was filed

in 1999 and was published for opposition on September 26, 2000. The application alleged dates

of first use of 1983 for some goods and 1986 for the remaining goods. Defendant did not oppose

the application from which this registration issued.

ANSWER: Admitted.

13.    Plaintiff is the owner of U.S. Registration No. 2,312,226, dated January 25, 2000,

for the mark GRIZZLY INDUSTRIAL for woodworking and metal working machinery in

International Class 7. The underlying application was filed in 1997 and was published for

opposition on February 23, 1999. The registration, as amended (motion and amendment are

pending), alleges a date of first use of August 1997. Defendant did not oppose the application

from which this registration issued.

7

ANSWER: Denied insofar as the motion and amendment are pending before the United States

Patent and Trademark Office and further responding that the motion and amendment evidence

fraud on the United States Patent and Trademark Office insofar as the dates of first use alleged

were originally 1983. Admitted otherwise.

14.     Plaintiff is the owner of U.S. Application Serial No. 76/088,346, filed July 10,

2000, for the mark GRIZZLY.COM for retail store services, on-line retail store services and mail

order services featuring woodworking and metal working machinery and tools in International

Class 35. The application was published May 15, 2001, and alleged a date of first use of June

30, 1999.

ANSWER: Admitted.

15.     On May 30, 2000, the attorneys for defendant sent a letter to plaintiff's attorneys
stating, among other things, the following:

While we do not have a problem with your client's use of Grizzly in conjunction with wood-
working equipment, we are extremely concerned with and object to your client's crossing into
our client's product line. In this regard, we must reiterate our demand and request that Grizzly
Industrial, Inc. discontinue all use of Grizzly in conjunction with materials handling products
such as storage cabinets, file cabinets, mobile door cabinets, portable workbenches, machine
cabinet stands, heavy duty tool stands, assembly stools, welding benches, workbenches,
workbench cabinet units, workstations, utility tables and carts, mobile tables and carts, hydraulic
lift top tables, portable writing tables and carts, box carts, shop tray trucks, hopper tables, stock
carts, shop trucks, ladder stock carts, shelf trucks, hand dump trucks, rollover dump trucks,
rollover box trucks, box truck, shelf trucks, garment trucks, dolly platform trucks, portable bins
and shelf carts, all-purpose hand trucks, drum and can handling equipment, shelving, racks and
the like.

The letter also admits that defendant had long been aware of plaintiff "doing business under the
name of Grizzly Imports which dealt solely in woodworking equipment." In the mid-80s,
plaintiff received in the mail one of defendant's catalogs. Defendant's president ordered a D&B
report on plaintiff in 1995, but did not take any action.

ANSWER: Admitted that Pucel received a D & B report on plaintiff Grizzly Industrial, however

it is denied that Pucel failed to take any action. Admitted that Pucel's attorneys authored a letter

dated May 30, 2000 as part of correspondence about trademark infringement by Grizzly
Industrial. Admitted that in the 1980's Pucel received a defendant's catalog.

16.     In May 2001, defendant filed a notice of opposition against Grizzly Industrial,
Inc.'s '346 application for the mark GRIZZLY.COM, and defendant also filed petitions for
cancellation against plaintiff's '625, '833 and '226 registrations for the marks GRIZZLY and
GRIZZLY INDUSTRIAL.

ANSWER: Admitted.

17.     Defendant's basis for the opposition and three cancellation proceedings were
identical. Defendant relied on six (6) registrations, namely, three (3) registrations for the mark
"grizzly" in lower case script and three (3) registrations for the design of a bear head within a
circle. Defendant's Registration No. 624,055 covers "shop equipment, namely, tables, benches,
cabinets, racks, shelves, stands, desks and parts thereof" in International Class 20. Defendant's
Registration No. 704,529 covers "box trucks, dump trucks, hand trucks, dollies and wheeled
platforms, wheeled racks and wheeled tables" in International Class 12. Defendant's United
States Registration No. 704,589 covers "drum lifters, tilting arcs, drum cradles, drum up-enders
and hoist hooks" in International Class 7. Registration Nos. 704,588; 704,631; and 704,530 for
the bear head in a circle design cover the same goods covered by defendant's '055, '529 and '589
Registrations.

ANSWER: Admitted that Pucel relied on six (6) United States Trademark Registrations, to wit,
United States Registration No. 624,055 covers "shop equipment, namely, tables, benches,
cabinets, racks, shelves, stands, desks and parts thereof" in International Class 20, United States
Registration No. 704,529 covers "box trucks, dump trucks, hand trucks, dollies and wheeled
platforms, wheeled racks and wheeled tables" in International Class 12, United States Trademark

Registration Nos. 704,589 covers "drum lifters, tilting arcs, drum cradles, drum up-enders and

hoist hooks" in International Class 7 and United States Trademark Registration Nos. 704,588;

704,631; and 704,530 for the GRIZZLY BEAR SYMBOL covers the same goods covered by

United States Trademark Registration Nos. 055, '529 and '589 Registrations. It is denied,

however, that the United States Trademark Registration Nos. 624,055; 704,529 and 705,589 are

in lower case script. Further denied, to the extent implied by the allegation, that Pucel's basis for

the oppositions and cancellations were identical and/or were limited to the aforementioned

United States Trademark Registrations.

18.    In reliance on defendant's letter of May 30, 2000, plaintiff filed a motion to

amend the '625 registration and the '346 application. The motion and amendments were not

decided by the TTAB. The amendments delete certain goods, namely, material handling

equipment of the type identified in defendant's registrations and in the letter of May 30, 2000.

Moreover, the amendments limited plaintiff's channels of trade to woodworking and metal

working tools and machinery.

ANSWER: Admitted insofar as Grizzly Industrial's filing of the motions to amend. However,

the remainder of the allegation is denied as the amendments and motions were decided by the

TTAB when it sustained the opposition to GRIZZLY.COM and when it granted the

cancellations.

19.    Specifically, in Application Serial No. 76/088,346, the amendment narrows the

description of the services and the channels of trade. The beginning of the amended description

of the services is as follows:

retail store services, online retail store services, and mail order services featuring products for
woodworking and metal working, namely services featuring . . .

10

(Emphasis to show the changes). The amendment also deletes from this application "services featuring dollies, hand trucks, storage bins, tool tables, sliding tables, and material handling equipment, namely carts, casters and wheels, mobile bases, outfeed tables and stands, roller stands, rollers, tables, and work stands."

ANSWER: Admitted that an amendment was filed and the opposition was sustained. Denied that the amendment narrows the description of the services and channels of trade.

20.    The amendment for Registration No. 2,413,625 narrows the description of services for Class 035 to refer to "mail order services for products for woodworking and metal working, namely services featuring . . .". The description of goods in Class 008 has similarly been limited to woodworking and metal working hand tools, namely . . . ". The description of goods in Class 009 is now limited to "Woodworking and metal working measuring equipment, namely, dial indicators, dial calibrators, digital calipers and instruments, and measuring tapes; software, namely, software for disseminating information related to wood and metal working and wood and metal working equipment through a global information network; magnetic switches."

ANSWER: Admitted that an amendment was filed and the opposition pertaining to the registration was sustained. Denied that the amendment narrows the description of the services and channels of trade.

21.    In addition to filing the amendments, plaintiff stopped using the mark GRIZZLY on material handling equipment, and substituted the mark PANTHER.

ANSWER: Denied.

22.    Material handling equipment is a negligible part of plaintiff's business and accounts for less than one-half percent ( ½ %) of plaintiff's annual sales.

ANSWER: Denied for lack of knowledge sufficient to form a belief.

23.    Plaintiff and defendant advertise and sell in completely different channels of trade to different customers, and the manner and conditions under which plaintiff and defendant sell their respective goods obviates any likelihood of confusion.

ANSWER: Denied

24.    Both plaintiff and defendant sell expensive goods directly to sophisticated and discriminating purchasers.

ANSWER: Admitted that Grizzly Industrial and Pucel sell goods directly to purchasers, however, the remainder of the allegations in paragraph 24 are denied.

25.    Numerous third party registrations demonstrate the lack of exclusivity of defendant's "grizzly" mark and the weakness thereof.

ANSWER: Denied.

26.    There has been concurrent use for over twenty-three years with eight or less alleged instances of actual confusion.

ANSWER: Denied.

27.    Defendant's registered marks are (a) the word "grizzly" in lower case script form, and (b) a bear design as follows:

          

Plaintiff's registrations are for the marks GRIZZLY and GRIZZLY INDUSTRIAL and plaintiff's pending application is for the mark GRIZZLY.COM.

ANSWER: Denied as to "grizzly" in lower case script form; remainder admitted.

12

28.    Defendant's registrations are for furniture in Class 20, namely, tables, benches, cabinets, racks, shelves, stands and desks; hand vehicles in Class 12, namely, hand trucks, dollies, wheeled platforms, wheeled tables and wheeled racks; and drum lifters, tilting arcs, drum cradles, drum up-enders and hoist hooks in Class 7.

ANSWER: Denied as this is an inaccurate representation of the goods identified in the registrations. To the extent that the allegation is accurate, admitted.

29.    The description of goods in defendant's registrations do not include the woodworking and metal working tools and machinery covered by plaintiff's application and registrations.

ANSWER: Denied.

30.    Defendant's registrations do not include any services.

ANSWER: Admitted.

31.    Plaintiff's registrations and pending applications, as amended, cover woodworking and metal working machinery and tools such as saws and drill presses, and retail store services, online retail store services and mail order services featuring products for woodworking and metal working. Plaintiff's registrations and applications, as amended, do not cover any of the goods listed in defendant's registrations.

ANSWER: Denied.

32.    Plaintiff's and defendant's products are sold in entirely different channels of trade. Plaintiff's and defendant's products are not sold in the same stores, are not sold in the same catalogs, are not sold at the same trade shows, are not advertised in the same publications, and are not sold on the same websites.

ANSWER: Denied.

33.     Plaintiff's woodworking and metal working products and services are offered exclusively and directly through plaintiff's mail order catalogs, plaintiff's website, plaintiff's toll-free phone order system and three Grizzly Industrial retail showroom stores. Plaintiff's products are not sold through distributors, are not sold to wholesalers, and are not sold in third party catalogs or in any retail stores other than plaintiff's three showroom stores.

ANSWER: Denied as to the characterization of Grizzly Industrial products and services as being woodworking and metal working. Admitted insofar as Grizzly Industrial sells through mail order catalogs, its website, by telephone and showrooms. Denied that the showrooms are Grizzly Industrial showrooms as it is believed they are GRIZZLY.COM showrooms. Denied for want of knowledge that the goods are not sold through distributors, are not sold to wholesalers, and are not sold in third party catalogs or in any retail stores other than Grizzly Industrial's three showroom stores.

34.     Most of plaintiff's orders are from plaintiff's catalogs, and orders are taken mostly over the phone via toll-free numbers from plaintiff's catalogs and advertising. Plaintiff distributes about two million catalogs annually. Customers place the call, talk to one of plaintiff's order agents, and place an order. Plaintiff's customers also mail orders in pre-printed envelopes addressed to plaintiff. The pre-printed envelopes are included in plaintiff's catalog. Plaintiff also sells over its website which prominently displays plaintiff's name. Finally, plaintiff sells from its three GRIZZLY INDUSTRIAL retail showroom stores.

ANSWER: Admitted that Grizzly Industrial distributes about two million catalogs annually. Denied for want of knowledge as to "most" orders and the methods of obtaining orders.

14

35.     Defendant displays its products in catalogs, and distributes approximately 15,000 catalogs per year. Most product catalogs distributed by defendant are sent out in response to a request for a catalog.

ANSWER: Admitted.

36.     Plaintiff and defendant do not attend the same trade shows. In the over twenty years that plaintiff and defendant have concurrently used their respective marks, plaintiff's president testified that he has never seen defendant at a trade show attended by plaintiff, and defendant's president testified that he has never seen plaintiff at a trade show attended by defendant.

ANSWER: Admitted.

37.     Plaintiff and defendant do not advertise in the same publications. Plaintiff has been advertising in woodworking and metal working trade publications since 1983. Plaintiff has never noticed an advertisement by defendant in any publication in which plaintiff has ever advertised, and defendant has never seen an advertisement for plaintiff's products in any publication in which defendant has ever advertised.

ANSWER: Admitted.

38.     Defendant's customers have not changed since the 1950s when defendant was founded. Defendant's customers are primarily factories, warehouses and laboratories.

ANSWER: Denied.

39.     Defendant's phone is answered "Pucel Enterprises." Defendant's customers often request custom designs. It is common for defendant's customers to request that defendant incorporate optional features offered by defendant to fit customers' particular needs.

15

ANSWER: Admitted that Pucel's phone is answered "Pucel Enterprises." The remainder of the allegation is denied because the words "often" and "common" are not understood. It is admitted however, that optional features are offered by Pucel and it is further admitted that custom designs are available.

40.    Direct contact with customers is also the manner in which plaintiff's sales are made. Most of plaintiff's orders are taken over the phone. At the retail store level, plaintiff's products are sold only in plaintiff's three retail showroom stores.

ANSWER: Denied for want of information sufficient to form a belief.

41.    Plaintiff and defendant target different customers, and their respective customers are sophisticated, discriminating purchasers. Historically, approximately half of defendant's advertising budget is spent on the Thomas Register. The Thomas Register is directed to "engineers, industrial companies, manufacturing companies." The other publications in which defendant advertises are also directed to industrial plants and warehouses. Defendant's advertising is also directed to the printing industry. Most of defendant's customers have some level of experience in purchasing products like defendant's, and they know defendant. The average order from defendant is approximately $500 to $800.

ANSWER: Denied insofar as both Grizzly Industrial and Pucel target different customers (in fact, plaintiff and defendant sell to some of the same large industrial customers). Denied that the customers are sophisticated, discriminating purchasers. Admitted that half of defendant's advertising budget is spent on The Thomas Register. Denied that The Thomas Register is directed to "engineers, industrial companies, manufacturing companies" as it is targeted to internet users. Admitted that Pucel has advertised to industrial plants and the printing industry,

16

but denied that these advertisements represent the exclusive target audience of Pucel. Admitted that the average order varies and, on the average, is approximately $500-800.

42.    Plaintiff targets homeowners engaged in woodworking and metal working. Woodworking customers account for about 85% of plaintiff's business. Plaintiff's products are not purchased on impulse. Plaintiff's tools and machinery require a significant level of knowledge and skill to operate. Plaintiff advertises a customer service telephone number for customers to use when ordering because customers often ask for the product's specifications or have technical questions about the product they are purchasing.

ANSWER: Denied.

43.    Moreover, plaintiff's goods are expensive, averaging $200, and 85% of plaintiff's orders are over $150; plaintiff's machinery ranges in price from $100-$40,000.

ANSWER: Denied for want of information sufficient to form a belief.

44.    The term "Grizzly" is commonly used as a trademark. There are at least 28 federal registrations for the mark GRIZZLY and GRIZZLY combined with other words or terms for various types of products, including, but not limited to, the following: Tracker Marine (Grizzly boats), Pentair Pump Group (Grizzly pumps and gears), Grizzly Manufacturing (drill bits), and Yamaha (Grizzly four-wheel all terrain vehicle).

ANSWER: Denied for want of information sufficient to form a belief.

45.    Plaintiff is not aware of even one instance of confusion, i.e., plaintiff never received a purchase order or phone call intended for defendant.

ANSWER: Denied for want of information to form a belief.

17

46.    Defendant is not aware of any instance where defendant ever lost a sale to
plaintiff, and defendant is not aware of any instance where anyone purchased one of plaintiff's
products intending to purchase defendant's product.

ANSWER: Admitted.

47.    The parties have been concurrently and extensively advertising and using their
respective marks for over twenty-four (24) years.

ANSWER: Admitted.

**CAUSE OF ACTION**

**APPEAL OF TTAB ORDER**

48.    Plaintiff realleges and incorporates by reference the allegations of
paragraphs 1 - 47.

ANSWER: No response required, however, Pucel incorporates by reference its answers to the
allegations set forth in paragraphs 1-47 above.

49.    The January 16, 2008 decision of the TTAB is a final decision subject to
review by the Court under Section 21 of the Trademark Act, 15 U.S.C. § 1071(b).  Plaintiff
elects to seek recourse by civil action under 15 U.S.C. § 1071(b) for reversal of the TTAB's
decision dated January 16, 2008.  A copy of the decision is attached as Exhibit 1.

ANSWER: Admitted that this purports to be an appeal of the January 16, 2008 decision of the
TTAB and that the decision of the TTAB is a final decision subject to review by the Court under
Section 21 of the Trademark Act, 15 U.S.C. § 1071(b).

50.    Plaintiff asserts that the TTAB erred in sustaining Opposition 91123506 and
Cancellation Nos. 92031984, 92032024 and 92032025, and plaintiff seeks review and reversal of
the TTAB's decision on the following grounds:

18

(a)    the TTAB's decision was arbitrary, capricious and an abuse of discretion;

(b)    the TTAB's findings were contrary to the evidence and/or were not supported by substantial evidence, and the TTAB's conclusions of law were clearly erroneous; and

(c)    a de novo review of the TTAB record and additional evidence which plaintiff intends to present to this Court for de novo consideration will be grounds for reversal.

ANSWER: Denied. It is further respectfully urged that the court should review the TTAB under the "substantial evidence" standard and should not permit new evidence beyond that produced below without a showing why the evidence wasn't produced before the TTAB.

51.    Based on its substantial investment in its GRIZZLY marks for over 25 years, plaintiff has acquired substantial goodwill and recognition in its GRIZZLY marks, and will suffer significant and irreparable damage if it is not allowed to register GRIZZLY.COM and to maintain registrations for its GRIZZLY and GRIZZLY INDUSTRIAL marks.

ANSWER: Denied

PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that:

A.    Judgment be entered reversing and vacating the TTAB's decision dated January 16, 2008;

B.    The Court find that plaintiff is entitled to register the marks GRIZZLY, GRIZZLY INDUSTRIAL and GRIZZLY.COM for the goods and services described in application Serial No. 76/088,346 and Registration Nos. 2,166,833; 2,312,226; and 2,413,625;

C.      The Court direct the Commissioner of Trademarks, pursuant to 15 U.S.C. § 1071,

to grant plaintiff's application, Serial No 76/088,346 for registration of the mark

GRIZZLY.COM;

D.      The Court grant plaintiff's motion to amend application Serial No. 76/088,346 and

Registration No. 2,413,625; and

E.      The Court grant such other and further relief to which plaintiff is entitled.

ANSWER TO PRAYER FOR RELIEF: Pucel denies that Grizzly Industrial is entitled to any of

the relief requested in paragraphs (A), (B), (C), (D) and (E) of the prayer for relief.

## COUNTERCLAIMS

**Defendant/Counterclaim plaintiff Pucel Enterprises, Inc. (hereinafter "Pucel"), for**

**its counterclaims against Plaintiff/Counterclaim defendant Grizzly Industrial (hereinafter**

**"Grizzly Industrial") alleges that:**

## COUNT ONE, COUNTERCLAIM FOR REGISTERED TRADEMARK

## INFRINGEMENT

Subject Matter Jurisdiction, Venue and Personal Jurisdiction

1.      Jurisdiction is expressly conferred on this Court under the Lanham Act

(Trademark Laws of the United States of America), 15 U.S.C. §§1051 et seq., including 15

U.S.C. §§ 1121, 1071(B), 1125(a), and 28 U.S.C. §2201 (Declaratory Judgment), 28 U.S.C. §§

1331, 1338(a), 1338(b) and 1367.

(a)     Jurisdiction over related common-law claims for unfair competition is conferred

under the provisions of 28 U.S.C. § 1338(b) and 1367 in that said claims are joined with a

substantial and related claim under the Trademark Laws of the United States, 15 U.S.C. §§

1051et seq. which arises from the same facts.

(b)     Venue is proper in the United States District Court for the Northern District of Illinois, Easter Division, pursuant to 28 U.S.C. 1391 (b) and (c). Personal Jurisdiction over Grizzly Industrial and Pucel exists as a substantial part of the events occurred in this district and both parties are engaged in business in this district.

Parties

2.      Pucel is a corporation incorporated under the laws of the State of Ohio, having its principal place of business at 1440 East 36th Street, Cleveland, Ohio 44114. Pucel is qualified to do business and is doing business in the State of Illinois and is doing business and using its registered trademarks, unregistered trademarks and unregistered service marks GRIZZLY and the GRIZZLY BEAR SYMBOL in interstate commerce throughout the United States of America.

3.      Grizzly Industrial is a corporation incorporated under the laws of the State of Washington having its principal place of business at 1821 Valencia St. Bellingham, WA 98229. Grizzly Industrial is qualified to do business and is doing business in the State of Illinois and is doing business in interstate commerce throughout the United States of America and is using Pucel's registered and unregistered trademarks and service marks GRIZZLY and the GRIZZLY BEAR SYMBOL without authorization.

Nature Of The Action

4.      Pucel is an Ohio corporation started by Edward Pucel in 1949 and is presently run by Anthony Mlakar, President and Robert Mlakar, Vice President.

5.      GRIZZLY ® EQUIPMENT, has been manufactured by Pucel since 1949 and is currently manufactured by Pucel in Cleveland, Ohio.

21

6.    All material handling and industrial products sold in interstate commerce by Pucel have been marked and labeled GRIZZLY ® EQUIPMENT MFG. BY PUCEL.

7.    Pucel owns U.S. Trademark Registrations 704,631 (Exhibit P1); 704,530 (Exhibit P2) and 704,588 (Exhibit P3) all for the GRIZZLY BEAR ® SYMBOL and U.S. Trademark Registrations 624,055 (Exhibit P4); 704,529 (Exhibit P5) and 704,589 (Exhibit P6) all for the word mark GRIZZLY ® which are attached hereto and set forth the dates of filing, registration and usage. Pucel relies on the registrations in regard to the filing dates of the applications to register the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL and for proof of its priority of use. A copy of each registration is attached hereto as an Exhibit and hereinafter the aforementioned registrations are referred to collectively as the "Pucel registrations". All of the goods identified in the registrations have been sold in interstate commerce with the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL affixed to the goods continuously since the dates set forth in the registrations.

8.    The goods recited in the GRIZZLY ® word mark United States Trademark Registrations  624,055; 704,529 and 704,589 are identical to goods recited in the GRIZZLY BEAR ® SYMBOL registrations 704,631; 704,530 and 704,588.

9.    All of the aforementioned United States Trademark Registrations owned by Pucel are incontestable, are in good standing before the United State Patent and Trademark Office and are valid. The validity of the registered marks and of the registration of the marks, Pucel's ownership of the marks, and Pucel's exclusive right to use said registered marks in commerce for the goods identified in the registrations are incontestable under 15 U.S.C. § 1065, and 15 U.S.C. § 1115(b), as Pucel has filed the required affidavits and renewals with the Commissioner of Patents and Trademarks.

22

10.   Pucel sells and has sold all the goods recited in the Pucel registrations continuously since at least as early as the dates stated in the registration including appropriate parts thereof. Pucel has also sold additional goods not recited in the registrations under and in connection with the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL. The goods include a wide variety of material handling and industrial equipment for use in a variety of industries and for personal use. Pucel has used the marks on its goods and to distinguish them from those made and sold by others, by, among other things, prominently displaying the marks on the goods, their containers and the displays associated therewith. In addition, plaintiff has prominently displayed said marks on letterheads, invoices, envelopes, catalogs, brochures, pricing literature, websites, distributors' websites, direct mail advertising, telephone directory advertising, and in periodicals distributed throughout the United States.

11.   Pucel has sold (in interstate commerce) many additional industrial and material handling products bearing the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL not literally specified in its registrations but which are found in its catalogs and price literature since at least as early as 1978 with respect to most of the goods not literally specified in the registration and prior to prior to any use by plaintiff of the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL.

12.   Pucel has sold (in interstate commerce) accessories affixed to its industrial and material handling products bearing the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL since at least as early as 1978 and prior to any use by plaintiff of the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL

13.   Since at least as early as 2001, Grizzly Industrial uses and has used the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL in interstate commerce on a variety of goods

23

including industrial equipment and material handling equipment as well as on a variety of related competitive and non-competitive goods and services including those goods and services identified in its: application to register GRIZZLY.COM; U.S. Trademark Registration No. 2,166,833;  U.S. Registration No. 2,413,625, U.S. Trademark Registration No. 2,312,226 as well as those goods identified in Grizzly Industrial's 2001 and 2005 catalogs and in its online website.

14.     Since at least as early as April, 2000, Grizzly Industrial was notified that Pucel was the owner of the Pucel registrations and that Grizzly Industrial was committing infringing acts and thus infringed the trademarks set forth in those registrations. Pucel gave written notice to Grizzly Industrial that its marks are registered in the U.S. Patent and Trademark Office. Pucel has demanded that Grizzly Industrial cease and desist from its acts of trademark infringement and gave Grizzly Industrial actual notice of Pucel's registrations, but Grizzly Industrial has refused to cease such acts.

15.     Grizzly Industrial did not heed the notice of infringement and did not stop using Pucel's registered and unregistered trademark and service mark GRIZZLY and the GRIZZLY BEAR SYMBOL.

16.     Grizzly Industrial and Pucel are competitors.

17.     In the ten year period 1995-2005, Grizzly Industrial spent approximately $40 million dollars advertising its company name and the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL. Grizzly Industrial spends in excess of $5 million dollars per year in advertising and distributes 1.2 million main catalogs annually  and 400,000 Christmas catalogs annually.

24

18.    Pucel during the years 1995-2005 spent between $64,000 and $100,000 per year advertising the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL.

19.    Grizzly Industrial identified in its 2001 and 2005 catalogs, some of its largest and well known customers to which it sells its products bearing the trademark GRIZZLY and the GRIZZLY BEAR SYMBOL and sold in connection with and advertised with the service mark GRIZZLY.COM.

20.    Pucel sells its products bearing the trademark GRIZZLY and the GRIZZLY BEAR SYMBOL to most but not all of the customers identified in Grizzly Industrial's 2001 and 2005 catalogs. Some of the customers of Pucel and Grizzly Industrial are the same customers.

21.    Pucel's word mark GRIZZLY and GRIZZLY BEAR SYMBOL used in interstate commerce on the goods identified in the Pucel Registrations are similar and/or identical to the marks used by Grizzly Industrial on the identical, similar, related, competitive and/or complementary goods.

22.    The products and services of Grizzly Industrial and Pucel are used in interstate commerce and are sold in connection with the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL are identical, related, competitive, non-competitive and/or complementary and they are sold in the same channels of trade. Pucel and Grizzly Industrial use catalogs, brochures, magazine advertisements, websites, direct mail ordering and telephone ordering to sell their goods.

23.    The goods of Pucel and Grizzly Industrial sold under the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL are complementary because they can be used together.

24.    Pucel's unregistered trademarks and service marks, namely, the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL, as used on its products and in connection with

25

products of others sold by Pucel are inherently distinctive or have acquired distinctiveness (acquired a secondary meaning) through long usage on its goods and services, advertisement and promotion. Some of the goods and services upon which Pucel uses its registered and unregistered marks includes, but is not limited to: benches including but not limited to welding, molding, tool cabinet, cabinet benches, portable and stationary drawer cabinet benches, various accessories, i.e. drawers, risers, shelves and tops; cabinets including but not limited to storage cabinets of various configurations and designs such as shelf, wardrobe, bin, tool, wall, lockers, sliding door, bi-fold door; carts including but not limited to box, cleaning, expanded metal, hand, tote-all, hopper, stock, ladder, 3 sided and utility; trucks including but not limited to a-frame, bar & rod, hand, rollover, box, instrument, drum dollies, pan & tray, platform, sheet & panel, shelf trucks, slat top, garment, corner shoes, cradle, and accessories; desks including but not limited to shop & foreman desks of various configurations and styles; drum handling including but not limited to cradles, dollies, racks and lifters; racks including but not limited to die, rack-u-frame, vertical bar, drum stacking of various designs and styles; stands including but not limited to machine cabinet, tool; tables including but not limited to hydraulic lift, marking, utility, portable writing; portable assembly stools; work stations, portable and stationary, ergonomic, with various accessories; online retail store services; mail order services; anti-vibration mounts, cable ties clamps and vises, drafting boards, electric motors, engine stands, gauges, hand screws, hand trucks, hose reels, hoses, jacks, knobs, lathe accessories, machine mounts, magnetic switches, pulleys, router table, slide tables, spindles storage bins, switches, tool tables, wagons, tool boxes, tool organizers; bumpers, drawer pulls, drawer slides, hinges, lock sets, shelf supports, electric switches, motors, rotary tables, sliding tables, spindles, stands, tool holders, material

26

handling equipment, namely, carts, casters and wheels, mobile bases, outfeed tables and stands, roller stands, rollers, tables, work stands, and measuring tools as well as other goods.

25.    Pucel's unregistered trademarks and service marks, GRIZZLY and the GRIZZLY BEAR SYMBOL are protectable under the 15 U.S.C. §1125 (a) and were used prior to any use of them by Grizzly Industrial.

26.    Pucel maintains a website which uses and displays in interstate commerce an unregistered use of the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL thereon and therein to advertise its material handling and industrial equipment products and online retail store services. Pucel began using the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL on the website in 1996 prior to any usage of the marks by Grizzly Industrial in connection with online retail store services. Pucel's website further uses and displays in interstate commerce the registered word mark GRIZZLY and the GRIZZLY BEAR SYMBOL thereon and therein.

27.    Pucel has used and displayed in interstate commerce and has continued to use and display in interstate commerce, under common law, an unregistered use of the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL in connection with mail order services and online retail services.

28.    Grizzly Industrial maintains a website to advertise its products and services.

29.    Pucel's and Grizzly Industrial's channels of interstate trade and classes of consumers are similar.

30.    Pucel's and Grizzly Industrial's products and services are similar, identical in some instances, related and complementary and are sold to the same and similar customers.

27

31.    Pucel and Grizzly Industrial have been engaged in the provision of the identical services, manufacture, distribution and sale of the identical products and services under the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL. Pucel is the senior user of the marks.

32.    Pucel and Grizzly Industrial have been engaged in the provision of the identical services, manufacture, distribution and sale of material handling and industrial equipment products an both parties have marked their goods with the word mark GRIZZLY and the GRIZZLY BEAR SYMBOL. Pucel used its registered and unregistered trademarks GRIZZLY and the GRIZZLY BEAR SYMBOL on said services and products for many years prior to any usage of the marks by Grizzly Industrial.

33.    Grizzly Industrial has infringed Pucel's  registered marks in interstate commerce by various acts, including operating stores in Bellingham, Washington; Muncy, Pennsylvania; and Springfield, Missouri, under the name GRIZZLY.COM, operating a website under WWW.GRIZZLY.COM, and selling, offering for sale and advertising the identical goods, related goods, competitive goods, complementary goods, and non-competitive goods sold by Pucel under the name and mark GRIZZLY and the GRIZZLY BEAR SYMBOL. The use in interstate commerce of the GRIZZLY and the GRIZZLY BEAR SYMBOL names and marks by Grizzly Industrial is without permission or authority of Pucel  and said use by Grizzly Industrial is likely to cause confusion, to cause mistake and to deceive.  As such, a case and controversy between the parties exists.

34.    Grizzly Industrial has infringed Pucel's  unregistered marks in interstate commerce by various acts, including operating stores in Bellingham, Washington; Muncy, Pennsylvania; and Springfield Missouri, under the name GRIZZLY.COM, operating a website under WWW.GRIZZLY.COM and selling, offering for sale and advertising the identical goods,

related goods, competitive goods, complementary goods, and non-competitive goods sold by Pucel under the name and mark GRIZZLY and the GRIZZLY BEAR SYMBOL. The use in interstate commerce of the GRIZZLY and the GRIZZLY BEAR SYMBOL names and marks by Grizzly Industrial is without permission or authority of Pucel and said use by Grizzly Industrial is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of defendant with Pucel as to the origin, sponsorship, and approval of Grizzly Industrial's goods, services and commercial activities by Pucel. As such, a case and controversy between the parties exists.

35.    Actual confusion as to the source, origin and association of the goods and services of Grizzly Industrial and Pucel has occurred and is continuing to occur.

36.    Grizzly Industrial's heretofore alleged acts of trademark infringement and unfair competition have been committed with the intent to cause confusion, mistake and to deceive and that said acts of infringement were willful, wanton and malicious.

37.    Grizzly Industrial has caused a likelihood of confusion including reverse confusion. Grizzly Industrial has caused reverse confusion in that it has saturated the market with a massive and extensive advertising campaign promoting the trademarks and service mark, namely, GRIZZLY, GRIZZLY BEAR SYMBOL and GRIZZLY.COM which is similar if not identical to the marks GRIZZLY and the GRIZZLY BEAR symbol of Pucel.

38.    By reason of Grizzly Industrial's acts alleged herein, Pucel has and will suffer damage to its business, reputation and good will and Pucel has and will sustain the loss of sales and profits Pucel would have made but for Grizzly Industrial's acts.

39.    Grizzly Industrial threatens to, and continues to do the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to Pucel's irreparable damage. It

would be difficult to ascertain the amount of compensation which could afford Pucel adequate

relief for such continuing acts. Plaintiff's remedy at law is not adequate to compensate it for

injuries threatened.

## COUNT TWO, VIOLATION OF LANHAM ACT BY USE OF FALSE DESIGNATION
## IN INTERSTATE COMMERCE

40.    Pucel hereby realleges and incorporates herein, as if fully set forth herein, the

allegations of paragraphs 1 through 39 inclusive, of Count One herein.

41.    Grizzly Industrial has caused the goods and services as set forth in its 2001 and

2005 catalogs (and others) as well as those displayed on and in its website

WWW.GRIZLY.COM to enter into interstate commerce with the designation and representation

of the word marks GRIZZLY, GRIZZLY.COM and the GRIZZLY BEAR SYMBOL connected

therewith. Said use of GRIZZLY, GRIZZLY.COM and the GRIZZLY BEAR SYMBOL is a

false designation of origin which is likely to cause confusion, to cause mistake and to deceive as

to the affiliation, connection or association of Grizzly Industrial with Pucel and as to the origin,

sponsorship, or approval of such goods set forth, for example, in the Grizzly Industrial 2001 and

2005 catalogs. These acts are in violation of 15 U.S.C. § 1125(a), in that Grizzly Industrial has

used in connection with goods and services a false designation of origin which is likely to cause

confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of

defendant with Pucel and as to the origin, sponsorship, and approval of Grizzly Industrial's

goods, services and commercial activities by Pucel.

42.    By reason of Grizzly Industrial's acts alleged herein, Pucel has and will suffer

damage to its business, reputation and good will and the loss of sales and profits Pucel would

have made but for Grizzly Industrial's acts.

30

43.     Grizzly Industrial will continue to do the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to Pucel's irreparable damage. It would be difficult to ascertain the amount of compensation which could afford Pucel adequate relief for such continuing acts. Pucel's remedy at law is not adequate to compensate it for injuries threatened.

### PRAYER FOR RELIEF ON PUCEL'S COUNTERCLAIM

WHEREFORE, Pucel prays:

1.     For injunctive relief for infringement of Pucel's federally registered marks. That this Court grant an injunction enjoining and restraining Grizzly Industrial and its officers, agents, servants and employees from directly or indirectly using the name and marks GRIZZLY and the GRIZZLY BEAR SYMBOL or any other mark, word, or name similar to Pucel's mark which is likely to cause confusion, mistake or to deceive.

2.     For injunctive relief for violation of 15 U.S.C. §1125(a) for infringement of Pucel's unregistered marks. That this Court grant an injunction enjoining and restraining Grizzly Industrial and its officers, agents, servants and employees from directly or indirectly using the name and marks GRIZZLY and the GRIZZLY BEAR SYMBOL or any other mark, word, or name similar to Pucel's mark which is likely to cause confusion, mistake or to deceive.

3.     That this Court, pursuant to the power granted it under 15 U.S.C. § 1118, order that all nameplates, labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Grizzly Industrial bearing the mark GRIZZLY and the GRIZZLY BEAR symbol and all plates, molds, and other means of making the same, shall be delivered up and destroyed.

4.    For a declaration that Grizzly Industrial has infringed Pucel's registered marks by selling, offering for sale and advertising the identical goods, related goods, competitive goods, complementary goods, and non-competitive goods sold by Pucel under the name and mark GRIZZLY and the GRIZZLY BEAR SYMBOL.

5.    For a declaration that Grizzly Industrial has infringed Pucel's unregistered marks by selling, offering for sale and advertising the identical goods, related goods, competitive goods, complementary goods, and non-competitive goods sold by Pucel under the name and mark GRIZZLY and the GRIZZLY BEAR SYMBOL.

6.    That Grizzly Industrial be required to account (an accounting) to Pucel for any and all profits derived by Grizzly Industrial from the sale of its goods and for all damages sustained by Pucel by reason of said acts of infringement.

7.    That Grizzly Industrial be required to restore Pucel to the position it was in before the infringement of registered marks and/or before the violation of 15 U.S.C. 1125 (a) began through an award for corrective advertising or other fair and just relief.

8.    For actual damages and that the Court award Pucel treble the amount of actual damages suffered by Pucel as a result of infringement of Pucel's registered marks and/or the violation of 15 U.S.C. §1125 (a).

9.    .  That the Court award punitive and exemplary damages against plaintiff Grizzly Industrial and in favor of Pucel as a result of Grizzly Industrial's intentional, willful, and wanton infringement and conduct.

10.    That this Court determines this to be an exceptional case and that Pucel be awarded its reasonable attorney fees.

11.    That the Court grant such other and further relief as it shall deem just and equitable.

12.    For prejudgment interest at the rate allowed by the State of Illinois and for a determination that the costs of this action are attributable to the Grizzly Industrial and shall be paid by Grizzly Industrial.

### JURY DEMAND

Pucel respectfully demands a jury trial on all claims and counterclaims that may be tried by jury.

Respectfully submitted,

Pucel Enterprises, Inc.
s/Andrea R.Zenker/
Kenneth L. Mitchell

Kenneth L. Mitchell
Ohio Bar Reg. No. 31587
Florida Bar Reg. No. 382531
Patent Attorney, Reg. No. 36,873
Registered Professional Engineer, Reg. No. 54455
Woodling, Krost and Rust
9213 Chillicothe Road
Kirtland, Ohio 44094
phone no. 440-256-4150;
fax no. 440-256-7453;
clevepat@aol.com
clevepat@sbcglobal.net

Andrea Zenker, Esq.
Illinois Bar No. 6286055
Higgins & Burke
7 South Second Avenue
Saint Charles, IL 60174
Phone: 630.762.9081
Fax: 630.762.9084

Counsel for Pucel Enterprises, Inc.

## CERTIFICATE OF SERVICE

A copy of the above Answer, Counterclaim and Jury Demand was mailed June  ,
2008 by Federal Express, to Joseph Schmidt, Esq., Welsh & Katz, 120 S. Riverside Plaza, 22nd
Floor, Chicago, Illinois 60606, and was sent via E-Mail to docket@welshkatz.com,
jfschmidt@welshkatz.com, mkatz@welshkatz.com, Attorneys for Grizzly Industrial, Inc..

/s/Andrea Zenker/

Kenneth L. Mitchell
Ohio Bar Reg. No. 31587

34

# United States Patent Office

**704,530**
Registered Sept. 20, 1960

## PRINCIPAL REGISTER
### Trademark

Ser. No. 91,450, filed Feb. 23, 1960



THE OHIO LEGAL BLANK CO., INC.

**DEFENDANT'S EXHIBIT**

$P\ 2$

CLEVELAND, OHIO 44102-1799



Pucel Enterprises, Inc. (Ohio corporation)
3746 Kelley Ave.
Cleveland 14, Ohio

For: BOX TRUCKS, DUMP TRUCKS, HAND TRUCKS, DOLLIES AND WHEELED PLATFORMS, WHEELED RACKS AND WHEELED TABLES, in CLASS 19.

First use Mar. 9, 1953; in commerce June 22, 1953.

# United States Patent Office

704,631
Registered Sept. 20, 1960

## PRINCIPAL REGISTER
### Trademark

Ser. No. 91,446, filed Feb. 23, 1960



THE OHIO LEGAL BLANK CO., INC.

**DEFENDANT'S EXHIBIT**

P 1

CLEVELAND, OHIO 44102-1799



Pucel Enterprises, Inc. (Ohio corporation)
3746 Kelley Ave.
Cleveland 14, Ohio

For: SHOP EQUIPMENT—NAMELY, TABLES, BENCHES, CABINETS, RACKS, SHELVES, STANDS, DESKS AND PARTS THEREOF—in CLASS 32.
First use Aug. 2, 1951; in commerce Nov. 21, 1951.

# United States Patent Office

704,588

Registered Sept. 20, 1960

## PRINCIPAL REGISTER
## Trademark

Ser. No. 91,445, filed Feb. 23, 1960



THE OHIO LEGAL BLANK CO. INC

**DEFENDANT'S EXHIBIT**

*P3*

CLEVELAND, OHIO 44102-1799



Pucel Enterprises, Inc. (Ohio corporation)
3746 Kelley Ave.
Cleveland 14, Ohio

For: DRUM LIFTERS, TILTING ARCS, DRUM CRADLES, DRUM UP-ENDERS, AND HOIST HOOKS, in CLASS 23.

First use Apr. 23, 1951; in commerce Sept. 21, 1951.

# United States Patent Office

**624,055**
Registered Mar. 27, 1956

## PRINCIPAL REGISTER
### Trademark

Ser. No. 689,517, filed June 14, 1955



THE OHIO LEGAL BLANK CO., INC.
**DEFENDANT'S EXHIBIT**
_P4_
CLEVELAND, OHIO  44102-1799

*Grizzly*

Pucel Enterprises, Inc. (Ohio corporation)
3746 Kelley Ave.
Cleveland 14, Ohio

For: SHOP EQUIPMENT—NAMELY, TABLES, BENCHES, CABINETS, RACKS, SHELVES, STANDS, DESKS, AND PARTS THEREOF—in CLASS 32.
First used Aug. 2, 1951; in commerce Nov. 21, 1951.

# United States Patent Office

704,529
Registered Sept. 20, 1960

## PRINCIPAL REGISTER
### Trademark

Ser. No. 91,447, filed Feb. 23, 1960



THE OHIO LEGAL BLANK CO., INC.

**DEFENDANT'S EXHIBIT**

*P5*

CLEVELAND, OHIO 44102-1799



Pucel Enterprises, Inc. (Ohio corporation)
3746 Kelley Ave.
Cleveland 14, Ohio

For: BOX TRUCKS, DUMP TRUCKS, HAND TRUCKS, DOLLIES AND WHEELED PLATFORMS, WHEELED RACKS AND WHEELED TABLES, in CLASS 19.

First use Mar. 9, 1953; in commerce June 22, 1953.

# United States Patent Office

704,589
Registered Sept. 20, 1960

## PRINCIPAL REGISTER
### Trademark

Ser. No. 91,448, filed Feb. 23, 1960



THE OHIO LEGAL BLANK CO., INC
**DEFENDANT'S EXHIBIT**
*P 6*
CLEVELAND, OHIO 44102-1799

*Grizzly*

Pucel Enterprises, Inc. (Ohio corporation)
3746 Kelley Ave.
Cleveland 14, Ohio

For: DRUM LIFTERS, TILTING ARCS, DRUM CRADLES, DRUM UP-ENDERS, AND HOIST HOOKS, in CLASS 23.
First use Apr. 23, 1951; in commerce Sept. 21, 1951.